MOSHER ET AL., APPELLANTS, *v.* CITY OF DAYTON, APPELLEE.

(No. 76-171—Decided December 22, 1976.)

· *Mr. Homer E. Lankford*, for appellants.

*Mr. James W. Drake*, city attorney, and *Mr. Raymond C. Hieber*, for appellee.

STERN, J. Appellants contend (1) that the ordinance in question infringes upon the right of the people to bear arms and, therefore, violates Section 4, Article I[2] of the

---

[2]"The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be kept up; and the military shall be in strict subordination to the civil power."

Ohio Constitution, and (2) violates the Second Amendment[*] to the United States Constitution. We disagree with appellants' contentions.

The ordinance does not deprive any individual of the protection of Section 4, Article I of the Ohio Constitution. All that the ordinance requires is that the person seeking to possess a handgun be identified under the provisions of the ordinance. In *State* v. *Neito* (1920), 101 Ohio St. 409, 130 N. E. 663, the court found to be constitutional a statute prohibiting the carrying of concealed weapons, stating, at page 413, that:

"* * * The statute does not operate as a prohibition against carrying weapons, but as a regulation of the manner of carrying them. The gist of the offense is the concealment. The constitution contains no prohibition against the legislature making such police regulations as may be necessary for the welfare of the public at large as to the manner in which arms shall be borne."

The Dayton ordinance in the present case is still less restrictive, for it does not limit the bearing of arms, but only requires that anyone who wishes to acquire a weapon first obtain an identification card in order to demonstrate that he is entitled to possess such a weapon. This is a reasonable police regulation which finds ample justification in the public interest of keeping dangerous weapons out of the hands of convicted felons and others forbidden to own and carry them. It is no more restrictive than regulations which require application for building permits, drivers' licenses, dog licenses, and many other matters. Reasonable gun control legislation is within the police power of a legislative body to enact; any such restriction imposes a restraint or burden upon the individual, but the interest of the governmental unit is, on balance, manifestly paramount. See *Burton* v. *Sills* (1968), 53 N. J. 86, 248 A. 2d 521, 28 A. L. R. 3d 829, and cited cases.

---

[*] "A well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed."

We also find no merit in the appellants' claim that the ordinance violates the federal Constitution (Second Amendment to the United States Constitution, *supra*). A state regulation of the ownership and use of firearms does not violate the Second Amendment unless it infringes upon the maintenance of a well-regulated militia, the right which the Second Amendment seeks to protect. See *United States* v. *Miller* (1939), 307 U. S. 174; *Presser* v. *Illinois* (1886), 116 U. S. 252. No provision of the Dayton ordinance conceivably interferes with that right.

It is true that in certain areas of federal and state Constitutional law the rights of the individual are supreme. In order to so find, the language authorizing such intention must be clear and unambiguous. We do not so find here. Neither federal nor state law states that the right of an individual to bear arms is supreme over the authority of a governmental unit under the police power to regulate the purchase of arms in a reasonable manner. The ordinance delineates in detail who may and who may not acquire a handgun. The public purpose furthered by this ordinance is evident; it is to safeguard the public as much as possible from the dangers of illegal weapons. This is certainly a proper subject for reasonable regulation under the police power.

Appellants have failed to show that their right to acquire and possess handguns is violated by the provisions of the Dayton ordinance. Therefore, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, W. BROWN and P. BROWN, JJ., concur.

CELEBREZZE, J., dissenting. I am unable to concur with the majority's conclusion that the Dayton ordinance under consideration does not limit the bearing of arms since it "only requires that anyone who wishes to acquire a weapon first obtain an identification card * * *."

We are concerned here with a municipal ordinance, the violation of which constitutes a misdemeanor in the first degree. The maximum penalties for a violation thereof are imprisonment for a term of six months, a fine of $1,000, or both.

Section 1055-5 of Ordinance No. 24780 identifies those individuals not eligible for a handgun owner's identification card. "A Handgun Owner's Identification Card shall not be issued to any person who is:

"A. Prohibited by Section 2923.13 of the Revised Code of Ohio, from obtaining, possessing, carrying, or using a firearm.

"B. *A person with more than one conviction within one year prior to his application* for Handgun Owner's Identification Card, *of any offense involving drunkenness or drug abuse.*

"C. *A person with a conviction of* ANY OFFENSE *involving the use of force and violence, or the threat of the use of force and violence, against the person of another.*" (Emphasis added.)

R. C. 2923.13, referred to in Section 1055-5, above, provides in pertinent part:

"* * * no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

"(1) Such person is a fugitive from justice;

"(2) Such person is under indictment for or has been convicted of any felony of violence, or has been adjudged a juvenile delinquent for commission of any such felony;

"(3) Such person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse, or has been adjudged a juvenile delinquent for commission of any such offense;

"(4) Such person is drug dependent or in danger of drug dependence, or is a chronic alcoholic;

"(5) Such person is under adjudication of mental incompetence." A violation of this section is a felony of the

fourth degree, punishable by imprisonment for a maximum term of five years, a fine of not more than $2,500, or both.

With the adoption of the Home Rule amendments to the Ohio Constitution in 1912, political power was distributed between the state and municipal levels of government. Exclusive state power remained in those areas where a municipality was in no way affected, or in which, for various reasons, state dominance was appropriate. An area of mutual power—promulgation of police regulations—was established, with points of friction between the enactments of the two levels subject to resolution by the "no conflict" test.[4] See paragraph two of the syllabus in *Struthers* v. *Sokol* (1923), 108 Ohio St. 263.

It is my belief that the public interest in keeping dangerous weapons out of the hands of those suffering from "disability" is a matter of statewide concern; therefore, the municipal police power is necessarily pre-empted by the provisions of R. C. 2923.13. Indeed, it is difficult to ascertain the justification for the municipal ordinance here involved, given the rather broad definition of those statutorily prohibited from possessing firearms.

Moreover, there is an apparent conflict between the provisions of R. C. 2923.13 and Section 1055-5 of Ordinance No. 24780, in that the Dayton ordinance prohibits the bearing of arms by those classes of persons italicized in the ordinance, above, while the statute, R. C. 2923.13, tacitly permits those same classes of persons to bear arms.

When reviewing legislation which seeks to restrict one of the fundamental civil rights, I would require that all limitations placed upon that right be not only reasonable, but also necessary. Because I believe the Dayton ordinance to be superfluous, I dissent.

---

[4]Section 3 of Article XVIII of the Ohio Constitution provides that: "Municipalities shall have authority * * * to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."