CITY OF UNIVERSITY HEIGHTS, APPELLANT, *v.*
O'LEARY, APPELLEE.

(No. 80-1716—Decided December 16, 1981.)

*Mr. Alan M. Wolk,* law director, for appellant.
*Mr. Richard D. Eisenberg,* for appellee.

KRUPANSKY, J. The sole issue presented in the instant cause is whether Sections 626.04(a) and 626.09(a) of the Codified Ordinances of University Heights are constitutional. For the reasons expressed below, we hold these sections constitutional and we reverse the Court of Appeals' holding to the contrary.

Chapter 626 of the Codified Ordinances of the city of University Heights contains a comprehensive firearm registration law.[2] The two sections challenged in this cause provide:

"626.04 IDENTIFICATION CARD REQUIRED

"(a) No person shall purchase, own, possess, receive, have

[2] Relevant parts of such Chapter are contained in the Appendix to this opinion.

on or about his person or use any handgun, pellet gun or stun gun, unless such person has a Restricted Weapons Owner's Identification Card issued to him and applicable to such weapon by reason of a proof of registration form issued pursuant to Section 626.07 of these Codified Ordinances then in effect pursuant to this Chapter, or unless such person is exempt from the requirements of having such identification card pursuant to Section 626.05."

"626.09 PROHIBITION AGAINST CARRYING A FIREARM IN A VEHICLE

"(a) No person, unless exempted by any of the provisions of this chapter, shall transport in any vehicle in or upon the streets and public places of the City any restricted weapon without having in his possession a Restricted Weapons Owner's Identification Card required by the provisions of this chapter, or, if a nonresident, a Restricted Weapons Owner's Identification Card, permit or authorization issued by the proper authorities of his residence, and provided that such restricted weapon shall at all times be unloaded and encased."

In finding these sections unconstitutional, the Court of Appeals relied primarily on *Lambert* v. *California* (1957), 355 U. S. 225, rehearing denied (1958), 355 U. S. 937, and *United States* v. *Mancuso* (C.A. 2, 1970), 420 F. 2d 556.

In *Lambert,* the Supreme Court held unconstitutional a Los Angeles municipal ordinance which made it an offense for a person who had been convicted of a crime punishable in California as a felony to be present in the city for more than five days or on more than five occasions within a 30-day period without registering with the Chief of Police. In a 5-4 majority opinion written by Justice Douglas, the court reasoned:

"Violation of its provisions is unaccompanied by any activity whatever, mere presence in the city being the test. Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking. At most the ordinance is but a law enforcement technique designed for the convenience of law enforcement agencies through which a list of the names and addresses of felons then residing in a given community is compiled. * * * Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted

consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community." *Id.* at 229-30.

In *Mancuso,* a federal court of appeals, relying on *Lambert,* reversed the conviction of a defendant for failure to register with customs officials upon leaving and re-entering the country, which registration was required by Section 1407, Title 18, U. S. Code, because he had been convicted of a narcotics offense. See *contra, United States* v. *Logan* (C.A. 9, 1970), 434 F. 2d 131.

The Court of Appeals' reliance on these cases is misplaced. The rule of law enunciated in *Lambert* has not been followed by courts dealing with the constitutionality of laws penalizing, under certain circumstances, the knowing possession of firearms.

In *United States* v. *Freed* (1971), 401 U. S. 601, a decision also authored by Justice Douglas, the court distinguished *Lambert* and held that one may be convicted of possession of an unregistered firearm, in this case a hand grenade, absent the knowledge that such possession was unlawful. The court reasoned that "one would hardly be surprised to learn that possession of hand grenades is not an innocent act." *Id.* at 609.

In *McIntosh* v. *Washington* (C.A. D.C. 1978), 395 A. 2d 744, the federal appellate court upheld the constitutionality of a District of Columbia law which imposes criminal penalties on those who fail to register firearms regardless of their knowledge of the duty to register. In so holding, the court stated:

"Appellant's reliance on *Lambert* v. *California,* 355 U. S. 225, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957), and *United States* v. *Mancuso,* 420 F. 2d 556 (2d Cir. 1970), is misplaced. These two cases carve out very narrow exceptions to the general rule that ignorance of the law is no defense. Except under the unique circumstances of *Lambert* and *Mancuso,* decisions in which persons were required to register because of their status, knowledge of the law is not a requirement of due process. The Supreme Court has indicated that dangerous or deleterious devices or products are the proper subject

134

of regulatory measures adopted in the exercise of a state's 'police power' — *e.g., United States* v. *International Minerals & Chemicals Corp.,* 402 U. S. 558, 91 S. Ct. 1697, 29 L. Ed. 2d 178 (1971) (corrosive liquids); *United States* v. *Freed,* 401 U. S. 601, 91 S. Ct. 1112, 28 L. Ed. 2d 356 (1971) (grenades); *United States* v. *Balint, supra* [258 U. S. 250] (narcotics); and *United States* v. *Dotterweich,* 320 U. S. 277, 64 S. Ct. 134, 88 L. Ed. 48 (1943) (adulterated and misbranded drugs). These cases are premised on the theory that where dangerous or deleterious devices or products are involved, the probability of regulation is so great that anyone who is aware that he is either in possession of or dealing with such items must be presumed to be aware of the regulation. *Shevlin-Carpenter Co.* v. *Minnesota* 218 U. S. 57, 64-65, 30 S. Ct. 663, 54 L. Ed. 930 (1910). That is to say,

"[T]here are fields in which the dangers are so high and the regulations so prevalent that, on balance, the legislative branch may as a matter of sound public policy and without impairing any constitutional guarantees, declare the act itself unlawful without any further requirement of *mens rea* or its equivalent. [*State* v. *Hatch,* 64 N.J. 179, 184, 313 A. 2d 797, 799 (1973).]

"See *United States* v. *Freed, supra; Shevlin-Carpenter Co.* v. *Minnesota, supra.* Gun control is clearly such a field." *Id.* at 756.

The *Lambert* decision rested on three factors: (1) The conduct involved was passive, (2) the situation addressed by the ordinance would not move one to inquire as to the applicable law, and (3) the law is designed solely for its convenience in compiling a list which might be of some assistance to law enforcement agencies. *United States* v. *Weiler* (C.A. 3, 1972), 458 F. 2d 474, 478. None of these factors is present in the instant cause.

First, mere passive conduct is not involved here. To violate the law, one must acquire possession of a firearm. *United States* v. *Crow* (C.A. 9, 1971), 439 F. 2d 1193, 1196, vacated on other grounds, 404 U. S. 1009 (1972); *State* v. *Drummonds* (1975), 43 Ohio App. 2d 187, 188-189. Second, the regulated conduct here, possession of a firearm, is one which by its nature suggests the possibility of governmental

regulation. *United States* v. *Freed, supra; United States* v. *Weiler, supra.* Third, the gun registration ordinance involved here is not designed solely for the convenience of law enforcement agencies. The purpose of the ordinance is to protect the citizens of University Heights from violence arising from handguns and other firearms by keeping firearms out of the hands of unfit persons, that is, those ineligible to receive a Restricted Weapons Owner's Identification Card.[3] See *Mosher* v. *Dayton* (1976), 48 Ohio St. 2d 243; *State* v. *Drummonds, supra; Photos* v. *Toledo* (1969), 19 Ohio Misc. 147.

Based on the above discussion, we hold Sections 626.04 (a) and 626.09(a) of the Codified Ordinances of University Heights constitutional. We hold that it is not violative of due process for the city of University Heights to require a non-resident, who does not possess a firearm owner's identification card from his own municipality, to acquire a Restricted Weapons Owner's Identification Card pursuant to Chapter 626 of the Codified Ordinances of University Heights, before bringing a firearm into the city of University Heights, unless he fits into the exceptions listed in Section 626.05.

In *Mosher* v. *Dayton, supra,* this court held in the syllabus as follows: "A city ordinance which requires those having and those acquiring handguns to possess an identification card issued by the city is a reasonable exercise of the police power." See, also, *Photos* v. *Toledo, supra.* We hold it is a reasonable exercise of the police power to require non-residents, as well as residents, to possess an identification card.

Section 3, Article XVIII of the Ohio Constitution provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

A duly enacted municipal ordinance is presumed constitutional; the burden of establishing the unconstitutionality of an ordinance is upon the one challenging its validity. *East Cleveland* v. *Palmer* (1974), 40 Ohio App. 2d 10. Appellee has failed to sustain this burden. Sections 626.04(a) and 626.09(a)

---

[3] Sections 626.02(a), (b), (c) and 626.04(d) provide who may be issued a card.

are not violative of due process. They are not vague. It is clear what is required: a firearm owner's identification card issued by either a non-resident's home municipality, or by the city of University Heights. The method for acquiring a card is clearly set forth in Chapter 626.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

W. BROWN, SWEENEY and LOCHER, JJ., concur.

CELEBREZZE, C. J., HOLMES and C. BROWN, JJ., dissent.

CELEBREZZE, C. J., dissenting.

I am unable to concur with the majority's conclusion that the University Heights ordinance at issue is a valid exercise of its police power.

The majority states that this fact situation does not comport with the standards enunciated in *Lambert* v. *California* (1957), 355 U. S. 225. I fail to discern any significant difference. That is, the appellee's actions substantially meet the requirements of passive conduct. Appellee did not personally carry or use the firearms, he was merely within the city limits and was in compliance with the state regulations on transporting firearms. Secondly, as a non-resident, appellee had no notice of the ordinance and had no reason to inquire about registration requirements. This satisfies the second requirement in *Lambert*. It is also arguable that the ordinance is designed to obtain a list of gun owners for law enforcement purposes. Consequently, I can not agree with the majority view that none of the three factors is present in the instant case. The *Lambert* case also calls for an opportunity to comply and avoid the penalty upon becoming aware of the duty to register. According to the United States Supreme Court in *Lambert,* actual knowledge of the duty to register or proof of probability of such knowledge and subsequent failure to comply is required. The University Heights ordinance is void under *Lambert.*

This court stated in *Froelich* v. *Cleveland,* (1919), 99 Ohio St. 376, in paragraph three of the syllabus, that:

"The state and municipalities may make all reasonable,

necessary and appropriate provisions to promote the health, morals, peace and welfare of the community. But neither the state nor a municipality may make any regulations which are unreasonable. The means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation.''

The means adopted in this ordinance are not substantially related to its purpose. The majority states that the goal of the ordinance is to protect citizens from violence arising from handguns by keeping them out of the hands of unfit persons. However, the registration required by the ordinance will unlikely have any effect upon unfit persons. Those persons deemed unfit, who want to possess guns, will find ways to obtain guns. Those who possess guns for criminal purposes will probably ignore the registration to avoid any possible tracing of violent crimes to persons registered.[4] However, those who possess guns legally will be more likely to register them. Thus, the means adopted will not achieve the desired results.

*Froelich* also requires that the ordinance be necessary to promote the health, morals, peace and welfare of the community. The Court of Appeals stated that the record showed that appellee transported firearms in compliance with state law. There are several state statutes which regulate firearms. For example, R. C. 2923.13 prohibits persons deemed unfit from acquiring, having, carrying or using any firearm or dangerous ordnance. A violation of this section imposes a penalty of a fourth degree felony.

Thus, in view of the other state statutes regulating firearms, the ordinance is not necessary.

I reaffirm the reasons in my dissent in *Mosher* v. *Dayton* (1976), 48 Ohio St. 2d 243, 248, when we considered a similar ordinance. Because the ordinance restricts individual rights, I would require that all limitations not only be reasonable, but also necessary.

C. BROWN, J., concurs in the foregoing dissenting opinion.

---

[4] 28 Cleve. St. L. Rev. 1, 18.

HOLMES, J., dissenting.

I am aware that this court, in *Mosher* v. *Dayton* (1976), 48 Ohio St. 2d 243, concluded that a city ordinance which requires handgun owners to possess an identification card issued by the city is a reasonable exercise of the police power. However, I must dissent from the majority herein because an analysis of the particular ordinance involved within this appeal appears to be an unreasonable exercise of the police power to accomplish the recognized legitimate goals which it seeks.

In the review and analysis of the claims of unconstitutionality or unreasonableness of any ordinance, the specific provisions of that particular ordinance as a whole must be weighed and balanced as to the lawfulness and reasonableness of arriving at the governmental goals. Here, upon review, I find significant differences in the ordinances of Dayton and University Heights. I shall only point out a few of such differences.

The Dayton ordinance provides in Section 138.11, "Handgun Owner's Identification Card Required," that:

"(A) No person shall possess any handgun, unless such person has a handgun owner's identification card * * * ."

Under Section 138.10, "Definitions" of handguns under the ordinance, "possess" is defined, "To knowingly carry or have a handgun on the person or ready at hand." Under such definition, it is reasonably arguable that a handgun being transported in the trunk of the automobile, as here, would not be found to be "on the person or ready at hand," and would not be held to be in violation of the Dayton ordinance. The same non-resident would, as here, be found to be in violation of the University Heights ordinance.

There is also a marked difference in the penalties to be found within the Dayton ordinance versus the University Heights ordinance. In the former, a violation of the ordinance is a misdemeanor of the first degree and imposes only a sentence of up to six months. In the University Heights ordinance the penalty set forth is "not more than one thousand dollars ($1,000) or imprisoned not more than one (1) year, or both. A separate offense shall be deemed committed each day during or on which a violation occurs or continues." Section 626.04(j) and Section 626.09(b). A non-resident, unaware of

the city ordinance, in the community on business, or merely passing through the community, could be sentenced to severe penalties under the University Heights ordinance.

Another objectionable feature of the University Heights ordinance not to be found in the Dayton ordinance is the mandatory confiscation and destruction by the police department of any firearm "which any person shall own, possess or use in violation of any of the provisions of this Chapter * * * upon conviction of such person of any offense under this Chapter * * *." Section 626.03(b). Conceivably, and hypothetically, this provision of the ordinance would mandate the confiscation and destruction of an extremely valuable gun collection of a legitimate gun collector en route to a gun collectors' show in Columbus, or elsewhere, who stopped in University Heights on business, for rest or other reason—merely because of a failure to register under a gun registration law which was unknown to him.

Gun registration acts and ordinances, where properly drawn, can well serve a legitimate public purpose and not run afoul of claims of unconstitutionality or unreasonableness. But here, in my view, the municipal ordinance of University Heights attempts to accomplish this exercise of police power in an unreasonable manner.

I would affirm the Court of Appeals.

C. BROWN, J., concurs in the foregoing dissenting opinion.

*APPENDIX*

CHAPTER 626

"626.01 DEFINITIONS. As used in this chapter:
"* * *

"(b) 'Firearm' means any weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm and any firearm which is inoperable but which can readily be rendered operable.
"* * *

"(f) 'Nonresident' means any person who does not have a place of residence within the corporate territorial limits of the City of University Heights.

" * * *

"(h) 'Resident' means any person who has a place of residence within the corporate territorial limits of the City of University Heights.

"(i) 'Restricted Weapon' means any firearm, pellet gun or stun gun for which a Restricted Weapons Owner's Identification Card is required by Section 626.04 of these Codified Ordinances or would be so required but for the exemptions set forth in Section 626.05.

" * * *

"626.02 PROHIBITIONS.

"(a) No person shall purchase, own, possess, receive, have on or about his person or use any firearm, pellet gun, stun gun or ammunition if such person is a fugitive from justice or is under adjudication of mental incompetence.

"(b) No person shall purchase, receive, have on or about his person or use any firearm, pellet gun, stun gun or ammunition while under the influence of alcohol, any narcotic drug, hallucinogen or other dangerous drug.

"(c) No person shall purchase, own, possess, receive, have on or about his person or use any firearm, pellet gun or stun gun, or ammunition if such person has been convicted of a felony under the laws of this or any other State, the United States or any of its territories or possessions, the District of Columbia or any foreign country. However, such person shall be eligible to possess, purchase, own, receive or have on or about his person or use a handgun or handgun ammunition after 10 years have elapsed from the date of completion of any sentence, probationary period or parole imposed upon such person so convicted.

" * * *

"626.03 CONFISCATION OF FIREARMS.

" * * *

"(b) Any firearm, pellet gun or stun gun, which any person shall own, possess or use in violation of any of the provisions of this Chapter shall, upon conviction of such person of any offense under this Chapter be confiscated and destroyed by the Division of Police, Department of Public Safety, City of University Heights, except that any such firearm, pellet gun

or stun gun which has been reported stolen shall be returned to the lawful owner thereof unless possession thereof by the owner would constitute a violation of any of the provisions of this Chapter.

"626.04 IDENTIFICATION CARD REQUIRED.

"(a) No person shall purchase, own, possess, receive, have on or about his person or use any handgun, pellet gun or stun gun, unless such person has a Restricted Weapons Owner's Identification Card issued to him and applicable to such weapon by reason of a proof of registration form issued pursuant to Section 626.07 of these Codified Ordinances then in effect pursuant to this Chapter, or unless such person is exempt from the requirements of having such identification card pursuant to Section 626.05.

"(b) Application for a Restricted Weapons Owner's Identification Card shall be made in writing under oath to the Chief of Police and shall be accompanied by an application fee of $5.00 which shall be paid into the Treasury of the City of University Heights and credited to a special account created and maintained for the sole purpose of defraying the cost of administration and enforcement of this Chapter. After initial investigation by the Chief of Police, if it appears upon identification that the applicant is not prohibited by this section from being issued an identification card, the Chief of Police shall issue an identification card to the applicant within not less than seven days nor more than 60 days from the date of application. A copy of such card shall be retained by the Chief together with a copy of the application, which documents shall be maintained on permanent confidential file by the Chief, to be made available only through subpoena by a Court of Record. Restricted Weapons Owner's Identification Cards issued pursuant to this section expire on the 30th day following the holder's third birthday after the date of issuance of such card and are void at any time prior to such date upon the holder becoming a member of the class of persons prohibited by this section from being issued a Restricted Weapons Owner's Identification Card.

"(c) All identification cards issued pursuant to this section shall be entitled 'City of University Heights, Ohio, Restricted Weapons Owner's Identification Card,' shall be serially

numbered according to a system devised by the Chief of Police, shall bear the date of issuance, the date of expiration, the applicant's name, home address, birth date, physical description, full face photograph and Social Security number, and shall be signed by the holder, in addition to such other relevant data as may be required by the Chief of Police. If, within 90 days after receipt of approval of the application, the applicant fails to appear for the processing and issuance of his identification card, such application shall be considered void but shall not bar the applicant from reapplying for such identification card. Such owner's identification card shall not in any manner authorize nor affect the carrying or possession of any weapon contrary to law.

"(d) A Restricted Weapons Owner's Identification Card shall not be issued to any person who is:

"(1) A person prohibited by Section 626.02 from purchasing, owning, possessing, receiving, having on or about his person or using any firearm or ammunition;

"(2) A person under the age of twenty-one (21);

"(3) A person convicted of a felony drug abuse offense as defined in RC 2925.01(I), effective 7/1/76, or similar definitions subsequently adopted;

"(4) A person with more than one (1) conviction of disorderly conduct involving intoxication within one (1) year prior to his application for such identification card;

"(5) Any person with more than (1) conviction of a misdemeanor involving the use of force and violence, or the threat of the use of force and violence, against the person of another within one (1) year prior to his application for such identification card;

"(6) Any person with a conviction of a felony involving, as an element thereof, the threat or use of force, at any prior time.

"(e) No person shall knowingly give any false information in making application for a Restricted Weapons Owner's Identification Card and no person shall use or attempt to use such card or purchase, own, possess, receive, have on or about his person or use any restricted weapon, knowing such identification card to belong to another or knowing it was obtained by means of false information or when it is void by reason of the

holder becoming a member of the class of persons prohibited by this section from being issued such card.

"(f) No person shall use or attempt to use his Restricted Weapons Owner's Identification Card to obtain any restricted weapon for any person who does not have a Restricted Weapons Owner's Identification Card issued to him and in effect pursuant to this section and is not exempt from the requirement of an identification card pursuant to Section 626.05 and no person shall knowingly permit his identification card to be used by another to purchase, own, possess, receive, have on or about his person or use any restricted weapon or ammunition.

"(g) If, an applicant is denied an identification card, such applicant may appeal such order of refusal to the Restricted Weapons Control Appeals Board which is hereby established and which shall consist of the Mayor, the Safety Director and a representative chosen by Council. Such appeal must be taken within ten (10) days from receipt of a notice of such refusal. The Restricted Weapons Control Appeals Board shall conduct a hearing upon such appeals within ten (10) days from receipt of a notice of appeal in writing from such order of refusal. If, an applicant is denied a Restricted Weapons Owner's Identification Card and the applicant, at the time of making the application, is the owner or possessor of a restricted weapon, such applicant shall, within thirty (30) days from the date of denial of such application, or, if an appeal is filed by such applicant to the Restricted Weapons Control Appeals Board, within thirty (30) days from the date of receipt of an affirmation of such order of refusal by the Restricted Weapons Control Appeals Board, dispose of such restricted weapon pursuant to the provisions of Section 626.06.

"(h) A possessor of an identification card shall become ineligible to possess such a card if he becomes one of that class of persons set forth in subsection (d) hereof. At such time, he shall immediately forfeit such card and return the same to the Chief of Police and shall, within thirty (30) days from the date of forfeiture, dispose of any restricted weapon in his possession pursuant to the provisions of Section 626.06.

"(i) A nonresident of the City who owns, manages or operates a business within the City, or whose terms of employment

require him to own, possess or have on or about his person a restricted weapon during his employment within the City, or any nonresident of the City passing through the City who complies with the prerequisites of this chapter, may make application for and obtain a Restricted Weapons Owner's Identification Card pursuant to the provisions of this section.

"(j) Whoever violates any of the provisions of this section shall be fined not more than one thousand dollars ($1,000) or imprisoned not more than one (1) year, or both. A separate offense shall be deemed committed each day during or on which a violation occurs or continues.

"626.05 EXEMPTIONS.

"(a) The requirement of a Restricted Weapons Owner's Identification Card obtained pursuant to Section 626.04 does not apply to the purchase, ownership, possession, receipt, having on or about the person or use of any restricted weapon or ammunition by:

"(1) Any State or of the United States or any political subdivision, department or agency thereof;

"(2) Officers or agents of any State or of the United States or any political subdivision, department or agency of either, members of the organized militia of any State or the Armed Forces of the United States, or law enforcement officers of any political subdivision, to the extent that the official duties of any such person requires him to purchase, own, possess, receive, carry or use restricted weapons;

"(3) Licensed manufacturers and their agents and servants, to the extent that the purchase, ownership, possession, receipt or use of any restricted weapon is in the ordinary course of business;

"(4) Non residents of the City who are residents of the State, provided that such persons are not prohibited by the provisions of Section 626.02 or 626.04 and possess and exhibit upon request such valid permit, authorization or identification issued under the authority of the government of their place of residence to purchase, own, possess, receive, carry or use any restricted weapon and provided, further, that restricted weapons in the possession of or under the control of nonresidents shall at all times be unloaded and encased, except while unloaded at a public firearms display, show or exhibition.

The requirements of a valid permit, authorization or identification as required by this subsection shall not apply to a nonresident who enters the City with firearms for the sole purpose of exhibiting or trading such firearms at a public firearms display, show or exhibition, or for the sole purpose of participating in an organized and sanctioned pistol match. The permit, authorization or identification provided for in this subsection shall be valid for only thirty (30) days from the date thereof;

"(5) Nonresidents of the City moving into the City for the purpose of establishing residence herein, during a period not exceeding sixty (60) days from the date of their entry into the City for such purpose, provided that such persons possess and exhibit upon request such valid permit, authorization or identification as may be required by the laws of their former domicile to own, possess, receive or have on or about the person any restricted weapon;

"(6) Executors, administrators, guardians, receivers, trustees in bankruptcy and other fiduciaries duly qualified and appointed by a Court of competent jurisdiction, when acting in their fiduciary capacity, and their attorneys;

"(7) Heirs and legatees acquiring any restricted weapon or ammunition therefor through distribution of an estate, and other persons other than fiduciaries acquiring any restricted weapon through operation of law, during a period not exceeding sixty (60) days from the date of their coming into possession of any restricted weapon;

"(8) Carriers, warehousemen and others engaged in the business of transporting or storing firearms, and their agents and servants, to the extent that the ownership, possession, receipt or having on or about the person of any such firearm by such persons is in the ordinary course of business and in conformity with the laws of this State or the United States.
"* * *

"626.09 PROHIBITION AGAINST CARRYING A FIRE-ARM IN A VEHICLE.

"(a) No person, unless exempted by any of the provisions of this chapter, shall transport in any vehicle in or upon the streets and public places of the City any restricted weapon without having in his possession a Restricted Weapons

146

Owner's Identification Card required by the provisions of this chapter, or, if a nonresident, a Restricted Weapons Owner's Identification Card, permit or authorization issued by the proper authorities of his residence, and provided that such restricted weapon shall at all times be unloaded and encased.

"(b) Whoever violates any of the provisions of this section shall be fined not more than one thousand dollars ($1,000) or imprisoned not more than one (1) year, or both. A separate offense shall be deemed committed each day during or on which a violation occurs or continues."