OPINION
Plaintiff-appellant the State of Ohio appeals the March 20, 2000 Judgment Entry of the Tuscarawas County Court of Common Pleas which found R.C. 2923.13 to be unconstitutional as applied to defendant-appellee Barton A. Schilling.
 STATEMENT OF THE CASE AND FACTS
On December 31, 1998, the Tuscarawas County Grand Jury indicted appellee with twenty-six counts of rape, one count of felonious sexual penetration and two counts of gross sexual imposition in Case No. 1998CR120264. Appellee plead not guilty to the charges and was released on bond after arraignment. The parties agree the arraigning judge did not notify appellee of any legal disability resulting from his indictment. On April 15, 1999, approximately three months following his arraignment, appellee took his shotgun to a local pawn shop and obtained a loan for $20, using the gun as collateral. On May 14, 1999, appellee returned to the pawn shop to recover the gun. Pursuant to the federal "Brady law," a records check was required to permit return of the gun. Appellee completed the required "Firearms Transaction Record" in compliance with the "Brady" procedure. In response to a question asking whether appellee was "under indictment or information in any court for a crime for which the judge could imprison you for more than one year," appellee answered "no." The FBI check on the application showed the above-referenced indictment. The pawn shop informed the authorities of appellee's attempt to obtain a firearm while under indictment. On August 20, 1999, the Tuscarawas County Grand Jury indicted appellee with one count of having a weapon under a disability in violation of R.C. 2923.13. In a September 10, 1999 Judgment Entry on arraignment, appellant plead not guilty to the charge. On January 27, 2000, appellee filed a Motion to Rule R.C.2923.13 unconstitutional. Appellee maintained the statute was violative of the due process clauses contained in the United States and Ohio Constitutions because it permitted conviction without an accused actually performing an act. In a March 20, 2000 Judgment Entry, the trial court found R.C. 2923.13
unconstitutional as applied to appellee. It is from this judgment entry appellant prosecutes this appeal, assigning as error:
 THERE IS NO CONSTITUTIONAL REQUIREMENT THAT A PERSON INDICTED FOR A FELONY OF VIOLENCE BE ADVISED OF HIS RESULTING DISABILITY TO POSSESS FIREARMS AND KNOWING POSSESSION THEREAFTER IS A VIOLATION OF R.C. 2923.13(A)(2).
 I
In his sole assignment of error, appellant maintains the trial court erred in finding R.C. 2923.13(A)(2) is unconstitutional as applied to appellee. For the reasons set forth below, we disagree. R.C. 2923.13, states, in pertinent part: (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
* * *
(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
Appellee maintains this statute criminalizes an unreasonable amount of innocent activity because a person can be convicted of the statute without doing an act. Appellee relies, in large part, on the reasoning of the Twelfth District Court of Appeals in State v. Winkelman (1981), 2 Ohio App.3d 465. In Winkelman, the appellant was indicted on charges of aggravated robbery and felonious assault. After indictment, but prior to trial on the charges, the appellant was found carrying a concealed weapon. Thereafter, he was indicted on the charge of having a firearm while under a disability, in violation of R.C. 2923.13(A)(2). After a jury found the appellant guilty of the charge of having a weapon while under disability, the appellant appealed. The Twelfth District Court of Appeals found R.C. 2923.13(A)(2) to be constitutional, but went on to find the statute was unconstitutional as applied to the appellant under the circumstances. In its syllabus, the court held "when prior indictments, which serve as the basis for the charge of `having weapons while under a disability' under R.C. 2923.13(A)(2), are resolved in favor of the defendant prior to the trial on the disability based charge, the prior indictments are then rendered unusable in the subsequent trial on the disability charge." Although not part of the syllabus, the Twelfth District further held: In order to obtain a conviction under R.C. 2923.13(A)(2), when the disability stems solely from a prior indictment for a felony of violence, the State must prove that the defendant had been given notice of his status as a member of a restricted class under R.C. 2923.13. The burden is not great, as the arraigning judge can easily incorporate such notice into his general instructions at the time of arraignment. Likewise, such notice could accompany the service of the indictment itself.
(Emphasis in original). Id. at 469.
In State v. Frederick (July 17, 1989), Butler App. Nos. CA88-07-111, CA88-07-118, unreported, the Twelfth District overruled part of its previous decision in State v. Winkelman, supra. The appellant in Frederick was initially arrested and charged with illegal possession of a firearm and carrying a concealed weapon. While awaiting trial on these charges, the appellant purchased a pistol from a pawn shop. Thereafter, the appellant was indicted for having weapons while under a disability, in violation of R.C. 2923.13(A)(2). The Frederick court followed the Winkelman syllabus in holding, the appellant's previous indictments had to have been resolved in his favor before such indictments would be rendered unuseable in a subsequent action on the disability. However, Frederick did overrule Winkelman's holding that notice of the disability was a prerequisite to conviction under the statute. Frederick concluded a defendant need only have knowledge as to the possession element of the offense and not knowledge of the disability itself. Id. at 3. Appellee asks this court to apply the reasoning contained in Lambert v. California (1957), 355 U.S. 225, 78 S.Ct. 240,2 L.Ed.2d 228, which is the same reasoning relied upon by the Winkelman court. In Lambert, the United States Supreme Court held unconstitutional a Los Angeles municipal ordinance which made it an offense for a person who had been convicted of a crime, punishable as a felony in California, to be present in the city for more than five days or on more than five occasions within a thirty-day period, without registering with the Chief of Police. In a five to four majority opinion written by Justice Douglas, the Court reasoned: Violation of its provisions is unaccompanied by any activity whatever, mere presence in the city being the test. Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking. At most the ordinance is but a law enforcement technique designed for the convenience of law enforcement agencies through which a list of the names and addresses of felons then residing in a given community is compiled. * * * Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community.
Id. at 355 U.S. at 229-30, 78 S.Ct. at 243-44.
In City of University Heights v. O'Leary (1981), 68 Ohio St.2d 130, the Ohio Supreme Court analyzed Lambert and the applicability of its reasoning. In O'Leary, the defendant was charged with violating a city ordinance which prohibited the possession and the carrying of firearms in a vehicle in the city, unless a person had a restricted weapons owner's identification card. The Supreme Court held the ordinance to be a reasonable exercise of police power. In making this determination, the Supreme Court reviewed Lambert in detail and found "[t]he rule of law enunciated in Lambert has not been followed by courts dealing with the constitutionality of laws penalizing * * * the knowing possession of firearms." Id. at 133. In reaching its conclusion, the Ohio Supreme court reviewed McIntosh v. Washington (C.A.D.C. 1978),395 A.2d 744, a federal appellate court case upholding the constitutionality of a District of Columbia law which imposed criminal penalties on those persons failing to register firearms, regardless of their knowledge of the duty to register. The O'Leary Court quoted with approval the following passage from McIntosh: "Appellant's reliance on Lambert * * * and United States v. Mancuso, 420 F.2d 556 (2d Cir. 1970), is misplaced. These two cases carve out very narrow exceptions to the general rule that ignorance of the law is no defense. Except under the unique circumstances of Lambert and Mancuso, decisions in which persons were required to register because of their status, knowledge of the law is not a requirement of due process. The Supreme Court has indicated that dangerous or deleterious devices or products are the proper subject of regulatory measures adopted in the exercise of a state's `police power' (Citations omitted). These cases are premised on the theory that where dangerous or deleterious devices or products are involved, the probability of regulation is so great that anyone who is aware that he is either in possession of or dealing with such items must be presumed to be aware of the regulation. (Citations omitted). That is to say,
 "(T)here are fields in which the dangers are so high and the regulations so prevalent that, on balance, the legislative branch may as a matter of sound public policy and without impairing any constitutional guarantees, declare the act itself unlawful without any further requirement of mens rea or its equivalent. Gun control is clearly such a field. (Citations omitted)
(Emphasis added). Id. at 133-134.
In its analysis, the O'Leary Court found the Lambert decision rested on three factors: (1) The conduct involved was passive, (2) the situation addressed by the ordinance would not move one to Cinquire as to the applicable law, and (3) the law is designed solely for its convenience in compiling a list which might be of some assistance to law enforcement agencies. (Citations omitted.)
Id. at 134.
Accordingly, we turn our attention to the facts of the matter sub judice in light of the three factors upon which Lambert was based. Arguably, only passive conduct is involved here. It was possible for appellee to violate the law by merely retaining possession of his previously lawfully acquired firearm for more than 10 days after his indictment. However, we note appellee's conduct carrying the firearm to the pawn shop was active conduct, not passive. Second, the regulated conduct here, possession of a firearm, is one which, by its nature, suggests the possibility of governmental regulation. Id. at 134. Third, the statute involved here is not designed solely for the convenience of law enforcement agencies. Rather, the purpose of the statute is to protect citizens from violence arising from handguns and other firearms by keeping firearms out of the hands of an unfit person; that is, someone under a disability. We agree with the reasoning set forth in Frederick. R.C. 2923.13 does not require a defendant to be aware of his disability as an element of the offense. Rather, the statute only requires a defendant knowingly acquire, have, carry, or use a firearm while a disability exists. We cannot support the notion ignorance of the law is a defense to a criminal prosecution. We find the indictment itself should alert a defendant to potential restrictions upon his otherwise normal, lawful activity. Appellant's sole assignment of error is sustained. The March 20, 2000 Judgment Entry of the Tuscarawas County Court of Common Pleas is reversed.
This case is remanded to the trial court for further proceedings in accordance with the law and this opinion.
 _____________________ Hoffman, J.
By: Gwin, P.J. and Farmer, J. concur