Matthias, J.
 

 The only question presented in this case is whether a municipal corporation may, by ordinance, prohibit mercantile establishments from using double-acting exit doors, and require the exit doors of such establishments to be so constructed and installed as to swing outward only. The ordinance of the city of Dayton having reference to the exit doors of mercantile establishments required that such doors should swing outward and toward the open or natural means of egress, and prohibited rolling, double-acting, sliding, and revolving doors as a means of egress from such establishments. The remedy of injunction is sought to prevent the enforcement of such ordinance upon the ground that the provisions referred to are invalid because the same are unreasonable and arbitrary.
 

 This ordinance was regularly enacted by the city of Dayton, which is a charter city, pursuant to the powers conferred by Section 3, Article XVIII, of the state Constitution. This ordinance constitutes a police regulation, and it is not in conflict with the general laws of the state. It therefore has the same force and effect within the city of Dayton as would an act of the Legisla
 
 *628
 
 ture, and consequently is valid unless it is in conflict with some provision of either the state or federal Constitution.
 

 The contention of counsel for plaintiff, the Kresge Company, has been and is that the paragraphs of the ordinance referred to, if enforced against it, will “constitute an unreasonable and illegal invasion of plaintiff’s rights, will unduly interfere with its business, and will place it on an inequality with its competitors in the city of Dayton.” Neither in the petition nor in the brief of counsel is there cited any provision of the Constitution, either state or federal, which it is claimed is violated or will be violated by the city of Dayton in the enactment and enforcement of the ordinance. The contention that it is invalid because unreasonable and arbitrary must be based upon the claim that such ordinance deprives the owner of his property, or of the use and enjoyment thereof, without due process of law, and is therefore violative of Article XIV, Section 1, of the federal Constitution, and Article I, Section 1, of the Ohio Constitution.
 

 A great deal of evidence was adduced upon the hearing in the court of common pleas, and that evidence, offered in the form of a transcript, and also in the form of additional testimony, both oral and by deposition, was adduced in the Court of Appeals. The common pleas court found that the testimony adduced before it supports the allegations of the plaintiff’s petition that the requirements of the ordinance are unreasonable and would interfere with the plaintiff’s business. The Court of Appeals approved the reasoning and
 
 *629
 
 conclusions of. the common pleas and held that the ordinance as framed and applied to the facts and circumstances, of plaintiff’s case is unreasonable and invalid.
 

 The proposition is well established that, ordinances of a municipality must not be unreasonable or arbitrary; but it is equally well settled that courts should not substitute their judgment for the legislative discretion and do not pass upon the wisdom or expediency of an ordinance.
 
 Allion
 
 v.
 
 City of Toledo,
 
 99 Ohio St., 416, 124 N. E., 237, 6 A. L. R., 426. Within constitutional limits the necessity, utility, and expediency of legislation are for the determination of the legislative body. 25 Ruling Case Law, 808.
 

 The courts enter upon such inquiry, therefore, with a presumption favoring the validity of the ordinance and with the burden devolving upon the one challenging its validity to show that it is clearly unreasonable and arbitrary.
 
 City of Xenia
 
 v.
 
 Schmidt,
 
 101 Ohio St., 437, 130 N. E., 24.
 

 The determination of the question whether or not this ordinance was reasonably necessary for the safety of the public is committed in the first instance to the judgment and discretion of the legislative body of the city, and if it acted reasonably and not arbitrarily the authorities should not be restrained by the process of injunction from carrying the provisions of such ordinance into effect. The rule applicable is well stated in the opinion of Mr. Justice Clarke in
 
 Cusack Co.
 
 v.
 
 City of Chicago,
 
 242 U. S., 526, 37 S. Ct., 190, 61 L. Ed., 472, L. R. A., 1918A, 136, Ann. Cas., 1917C, 594, where, referring to the proper attitude of
 
 *630
 
 the court with reference to interference with the enforcement of a local police regulation, he said at page 531:
 

 “It will interfere with the action of such authority only when it is plain and palpable that it has no real or substantial relation to the public health, safety, morals, or to the general welfare.”
 

 The importance of the proposition is apparent when it is observed that the validity of some provision of the state building act is indirectly brought into question, for by the provisions of Sections 12600-25 and 12600-60, General Code, the use of double-acting doors as a means of ingress or egress is prohibited in theaters, assembly halls, and in school buildings. The validity of these provisions has not been challenged, but this court in the case of
 
 City of Cincinnati
 
 v.
 
 Steinkamp, Trustee, 54
 
 Ohio St., 284, 43 N. E., 490, not only held valid the provisions of a statute requiring the erection of fire escapes on all buildings of three stories or more in height, except private residences, but also held that a provision authorizing injunction of the use or occupation of any building in violation of that act was not invalid as depriving the owner of the use of property without due process of law.
 

 The ordinance in question here is claimed to have been enacted as a police regulation for the protection of the lives and safety of the citizens. Our question is simply whether the provisions under consideration bear a real and substantial relation to the public safety, and whether they are reasonably adapted to - such purpose and not unreasonable or arbitrary.
 

 
 *631
 
 A detailed review of the evidence presented would be unnecessary and unprofitable. The Kresge Company called as witnesses several men of wide experience in the mercantile business, who testified quite uniformly that by the use of the double-acting door confusion is avoided at the entrance, better order is preserved inside the store, and people keep in files more naturally by the use of the door which may open inward as well as outward, and gave their opinion that it is the most practical and safest door to be had. On the other hand, the city, in addition to some merchants of considerable experience, called several architects and building inspectors, including the state fire marshal and others, whose business it has been to study the problem of safety among other problems presented in the erection of buildings of various types and descriptions, and their testimony and opinions sustain and support the requirement in question here as being a reasonable and proper one and calculated to reduce the danger to the public frequenting such stores in large numbers, and therefore as having a reasonable relation to the public safety. This evidence can be somewhat reconciled when the point of view of the witnesses testifying is taken into consideration. Under ordinary conditions probably patrons can pass in and out of the double-acting door more readily than through the door which opens only outward, but in the event of fire the evidence is quite substantial that the door opening outward only would be safer and better and more calculated to give a free and unobstructed means
 
 *632
 
 of exit,, and that is the evident purpose of the provisions in question.
 

 From a consideration of the entire record it cannot be concluded that it has been shown that the regulation and restriction in question are clearly unreasonable and arbitrary, or that they do not bear a real and substantial relation to the public safety. It not appearing that there was a clear and palpable abuse of their police power by the duly constituted, authorities of the city of Dayton, we are of the opinion that the issuance of an injunction to prevent the enforcement of the duly enacted ordinance is unauthorized.
 

 It follows that the judgment of the Court of Appeals affirming the judgment of the court of common pleas is reversed.
 

 Judgment reversed.
 

 Jones, Day, Allen and Robinson, JJ., concur. Kinkade, J., dissents.