THE STATE OF OHIO, APPELLANT, *v.* MEYER ET AL., APPELLEES.

(Nos. 82 CA 62, -63, -64, -65—Decided August 22, 1983.)

*Mr. William F. Schenck,* prosecuting attorney, and *Ms. Vicki R. Patton-Hulce,* for appellant.

*Messrs. Cox & Cox* and *Mr. David W. Cox,* for appellees.

*Ms. Lita C. Miller,* for *amicus curiae.*

BROGAN, P.J. Defendants-appellees, Bobby Meyer, Jr., Albert Stollings, David Hamilton and Derrick Ames, were all indicted for separate violations of R.C. 3113.06. That statute reads:

"No father, or mother when she is charged with the maintenance, of a legitimate or illegitimate child under eighteen years of age * * * who * * * is the recipient of aid pursuant to Chapter 5107 * * * of the Revised Code, shall neglect or refuse to pay such board or department the reasonable cost of maintaining such child when such father or mother is able to do so by reason of property, labor, or earnings."

After the appellees entered pleas of not guilty, their counsel moved to dismiss the indictments alleging that R.C. 3113.06 was unconstitutional in that it violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and that the appellees must be found not guilty of a charge under R.C. 3113.06 because that statute violates R.C. 2901.21 requirements for criminal liability.

The trial court granted the appellees' motions and dismissed the indictments. From those dismissals, the state has filed a timely notice of appeal in accordance with R.C. 2945.67(A). The American Civil Liberties Union was granted permission to file briefs of *amicus curiae* in support of the appellees. The state has asserted as error the trial court's ruling that R.C. 3113.06 is unconstitutional.

The trial court determined that R.C. 3113.06 was unconstitutional because it violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution. The trial court held that since the appellees were charged with violations of R.C. 3113.06, a fourth degree felony, solely because they failed to support a depen-

dent on ADC, and could only be charged with a misdemeanor violation of R.C. 2919.21 if the dependent were not receiving ADC benefits, the classification violates the "Equal Protection" Clause because it essentially bases its distinction "solely on the financial disposition of the defendant and/or custodian."

The trial court also found that R.C. 3113.06 discriminated on a gender based classification in limiting the mother's liability under the statute and the state had no rational basis or compelling interest in making such distinction.

It is well-established that the burden of showing the unconstitutionality of a statute or ordinance is upon the one challenging its validity. *State, ex rel. Euclid-Doan Bldg. Co.,* v. *Cunningham* (1918), 97 Ohio St. 130. This is a result of the general presumption in favor of the validity of legislation. R.C. 1.47(A); *State* v. *Sinito* (1975), 43 Ohio St. 2d 98 [72 O.O.2d 54]. It is firmly established that courts must always indulge a strong presumption in favor of the constitutionality of legislation. *Dayton* v. *S. S. Kresge Co.* (1926), 114 Ohio St. 624. Courts will construe legislation so as to uphold its constitutionality if possible, and will resolve all doubts in favor of constitutionality. *Schneider* v. *Laffoon* (1965), 4 Ohio St. 2d 89 [33 O.O.2d 468]. On review of statutory acts, a court is bound to give a constitutional rather than an unconstitutional construction if one is reasonably available. *United Air Lines* v. *Porterfield* (1971), 28 Ohio St. 2d 97 [57 O.O.2d 288]. The proof of unconstitutionality must be clear and beyond a reasonable doubt. *Bartol* v. *Eckert* (1893), 50 Ohio St. 31; *Monroeville* v. *Ward* (1971), 27 Ohio St. 2d 179 [56 O.O.2d 110].

R.C. 3113.06 is not legislation which discriminates against a suspect class, the poor. The legislation makes criminal the actions of a *financially able* individual permitting his children to become public charges and then neglecting or refusing to reimburse the state.

Appellees contend that this recoupment statute is violative of the Equal Protection Clause and cite *James* v. *Strange* (1972), 407 U.S. 128, for that proposition.

In *James, supra,* the United States Supreme Court declared invalid, under the Equal Protection Clause, a Kansas recoupment statute which discriminated against judgment debtors who were obligated to the state. Under that statute, a criminal defendant who had been provided with legal counsel at the state's expense was required to reimburse the state within ninety days after the legal services were rendered. Failure to do so resulted in a civil judgment being docketed against the criminal defendant, and amounts recovered by the state on such judgment reverted to the "Aid to Indigent Defendants Fund." The judgments were enforceable in the same manner as other civil judgments in Kansas, with one significant exception: the otherwise available exemptions of property from execution of judgments were denied to the indigent criminal defendant.

The court in *James* acknowledged the legitimacy of the state's interest in recouping funds expended for public assistance, and recognized that such interest might permit the state to deal with the defendants in a procedurally different manner than with judgment debtors as a whole. Nevertheless, the court found that such an interest could not justify a discriminatory denial of substantive rights, stating at 138:

"This does not mean, however, that a State may impose unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor."

In *Rinaldi* v. *Yeager* (1966), 384 U.S. 305, the court at 308-309 stated the Equal Protection Clause "imposes a requirement of some rationality in the

nature of the class singled out." The court in *James* at 140-141 opined:

"This requirement is lacking where, as in the instant case, the State has subjected *indigent* defendants to such discriminatory conditions of repayment. This case, to be sure, differs from *Rinaldi* in that here all indigent defendants are treated alike. But to impose these harsh conditions on a *class* of debtors who were provided counsel as required by the Constitution is to practice, no less than in *Rinaldi,* a discrimination which the Equal Protection Clause proscribes." (Emphasis added.)

Unlike the Kansas "recoupment" statute, R.C. 3113.06 does not single out formerly "indigent" defendants for discriminatory treatment. The Ohio statute applies only to defendants who are financially *able* to provide and choose to ignore that obligation.

Appellant contends that the trial court erred in declaring R.C. 3113.06 unconstitutional because it impermissibly discriminates against fathers.

R.C. 3113.06 states that *"no father, or mother when she is charged with the maintenance,* of a legitimate or illegitimate child under eighteen years of age * * * who is the recipient of aid * * * shall neglect or refuse to pay such board or department the reasonable cost of maintaining such child when such father or mother is able to do so * * *."* (Emphasis added.)

R.C. 3113.06 differs from R.C. 2919.21(A)(2) in that the latter section reads: "No *person* shall abandon, or fail to provide adequate support to: * * * His or her legitimate or illegitimate child under eighteen * * *." (Emphasis added.)

The trial court found that R.C. 3113.06 was unconstitutional because it placed a limitation on a mother's liability, and there is no rational basis or compelling state interest for such distinction. The court found this statutory section placed an unequal burden upon the

father in derogation of the Ohio and United States Constitutions. The court cited *Weinberger* v. *Wiesenfeld* (1975), 420 U.S. 636, as authority.

The historical background to R.C. 3113.06 and 2919.21 is discussed by the Supreme Court in *Seaman* v. *State* (1922), 106 Ohio St. 177. G.C. 13008 read substantially as the present R.C. 3113.06. The intent of the legislation, the Supreme Court stated, was to compel persons charged by law with the support of designated dependents to meet the full measure of their obligations to such dependents and society.

The original act of April 16, 1890 was construed as to purpose and intent by the Ohio Supreme Court in *Bowen* v. *State* (1897), 56 Ohio St. 235. The court stated at page 239: "The duty is primarily devolved on the father to support his minor children out of his property, or by his labor."

The primary responsibility for supporting the family devolved upon the father because historically he was the breadwinner of the family. Only in recent years has the mother left the home and assumed income producing responsibilities alongside her husband. Therefore, R.C. 3113.06 merely reflects the legislature's assumption that the father would be the party charged with the duty of maintenance, but that if the mother were in fact charged with a maintenance responsibility she would incur liability similar to the father of the children.

Appellees contend that since it is possible that the father could be liable even where not charged with a maintenance obligation to his children, the statute denies the father equal protection of the laws of the state of Ohio. We do not believe that strained interpretation was intended by the legislature, and we will not strain to place such an interpretation on the statute.

It is well-established that where the validity of an Act is assailed, and there

are two possible interpretations, one of which would render it valid, and the other invalid, the court should adopt the former, so as to bring the act into harmony with the Constitution. Indeed, it has been held that where a court is faced with two possible interpretations of a statute or ordinance, one which would render it constitutional and the other unconstitutional, it is the duty of the court to choose that interpretation which would uphold its validity. *Cincinnati* v. *De Golyer* (1971), 25 Ohio St. 2d 101 [54 O.O.2d 232].

The fact that it was "possible" that the appellees could be prosecuted as fathers only, and not as fathers "charged with an obligation of maintenance," should not have been grounds for the trial court's ruling the statute unconstitutional. The Supreme Court has held that although a statute under some applications might be unconstitutional, it will not be so held in a case which does not involve an unconstitutional application of the statute. *State, ex rel. Speeth,* v. *Carney* (1955), 163 Ohio St. 159 [56 O.O. 194]; see, also, *State* v. *Wetzel* (1962), 173 Ohio St. 16 [18 O.O.2d 203].

Presumably, the state chose to prosecute the appellees because they were fathers who were charged with a support obligation and refused to reimburse the state for funds expended in their children's behalf. Appellees may not challenge a statute as unconstitutional because it may hypothetically be applied in an unconstitutional manner.

Appellees argue that R.C. 3113.06 denies them equal protection of the law because it discriminates against them solely on the basis of their being parents of children receiving ADC benefits. Had they failed to support their children and the children not received ADC benefits they as fathers were subject only to the misdemeanor penalties of R.C. 2919.21. That statute reads as follows:

"(A) No person shall abandon, or fail to provide adequate support to:

"* * *

"(2) His or her legitimate or illegitimate child under eighteen * * *;

"* * *

"(D) Whoever violates this section is guilty of nonsupport of dependents, a misdemeanor of the first degree."

The parent's duty of support also runs to the state. It is the duty to the state which has been codified by R.C. 2919.21, making the failure to provide adequate support a misdemeanor of the first degree. The nature of the duty imposed by R.C. 2919.21 has been described as follows:

"* * * [T]he duty he owes the public of saving it from the expense of supporting his children, is personal and continuing * * *. He must answer to the state for his omission of that duty * * *.'" *State* v. *Oppenheimer* (1975), 46 Ohio App. 2d 241, at 246 [75 O.O.2d 404], quoting *Bowen* v. *State, supra,* at 239.

Appellees argue that since R.C. 2919.21 and 3113.06 both rest upon the same duty of support, there can be no doubt that the sole purpose of imposing felony penalties upon the parents of an ADC child is to further the state's civil interest in recouping benefits.

The state may choose to prosecute for nonsupport of children under either R.C. 2919.21 or 3113.06. Not all nonsupport results in the requirement that state pay out of its limited funds the support which the financially able parent should provide. Presumably, if a parent charged with a support obligation fails to support his or her children, they become in danger of needing state assistance. Placing the child in that "danger" can form the basis for the criminal charge under R.C. 2919.21. Ignoring one's support obligation for a period of time whereby the custodial parent must seek ADC benefits is arguably more egregious conduct. The legislature may discourage such offensive conduct by punitive legislation.

Appellees argue that since R.C. 3113.06 is penal in nature, it does not

operate to restore funds expended by the state. Appellees argue that the child will lose the emotional care and companionship of his noncustodial parent. Appellees make no similar argument as to the penalties under R.C. 2919.21. They differ only in degree.

It is not unusual that criminal penalties which may require imprisonment fail to facilitate restitution. The state often must forego restitution to crime victims, in order to facilitate other purposes of its penal laws. Deterrence is a valid purpose of the criminal law. This court cannot sit in judgment of the desirability of legislation. The proper method of dealing with nonsupporting fathers and mothers is often frustrating. We cannot say that harsh penal legislation is not a permissible approach to this ever increasing problem in our society.

Appellees argue that R.C. 3113.06 is predicated upon the child's poverty (an ADC recipient) and therefore is class discrimination based on wealth. Such an argument reminds the court of the argument made by the convicted murderer of his parents who pled for leniency because he was now an orphan. Appellees' argument is circular at best. Appellees argue that they cannot control the ADC status of their children; that is, the custodial parent may misuse funds received from the accused and thus place the accused in jeopardy of prosecution under R.C. 3113.06. Clearly R.C. 3113.06 applies *only* where the state has assumed the obligation of supporting children the accused has neglected or refused to support.

In short, we believe R.C. 3113.06 to be constitutional. It does not offend the Equal Protection Clauses of the Ohio or federal Constitutions.

The judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings in accordance with law.

*Judgment reversed*
*and cause remanded.*

KERNS and WEBER, JJ., concur.