### Hale v. Columbus
*[Cite as 4 AOA 458]*

*Case No. 89AP-1365*
*Franklin County, (10th)*
*Decided June 28, 1990*

*Mr. David M. Buda, for Appellants.*

*Mr. Ronald J. O'Brien, City Attorney, and Mr. James J. Fais, for Appellee.*

*Jones, Day, Reavis & Pogue, Mr. Erwin N. Griswold and Mr. James M. Loots, for Center to Prevent Handgun Violence Legal Action Project, Fraternal Order of Police of Ohio, Inc. and Ohio Association of Chiefs of Police as Amicus Curiae.*

*Keating, Muething & Klekamp, and Mr. Richard L. Creighton, Jr., for the Congress of Racial Equality, Inc. as Amicus Curiae.*

*Mr. Stephan Tahmassebi, for the Office of General Council, National Rifle Association as Amicus Curiae.*

YOUNG, J.

This matter is before this court upon the appeal of Richard Hale et al., appellants, from a judgment rendered in favor of appellee, City of Columbus, Ohio ("city"). On May 22, 1989, the Columbus City Council enacted Ordinance No. 1226-89 ("the ordinance") which, among other things, banned the possession and sale of "assault weapons[1]" and "large capacity magazines,[2]" and required the registration and licensing of assault weapons currently in possession. The ordinance amended Columbus City Code ("C.C") Section 2323.01 and enacted C.C. Sections 2313.05 and 2323.06 affecting firearm possession.

On October 20, 1989, appellants filed an action in the Franklin County Court of Common Pleas seeking declaratory judgment and temporary and permanent injunctive relief against the enforcement of the ordinance which was to take effect on October 31, 1989. The trial court conducted a hearing on October 27, 1989, and evidence was submitted. The hearing was continued until October 30, 1989, and thereafter, the trial court denied appellants' request for a declaratory judgment, and preliminary and permanent injunctive, relief, and made a determination that the ordinance was constitutional. The trial court dismissed appellants' complaint with prejudice.

Thereafter, this appeal ensued whereby the appellants asserted the following five assignments of error:

"I. THE TRIAL COURT ERRED IN HOLDING THAT IT LACKED JURISDICTION TO QUESTION FACTUAL DETERMINATIONS MADE BY CITY COUNCIL IN ENACTING AN ORDINANCE.

"II. THE TRIAL COURT ERRED IN HOLDING THAT THE ORDINANCE WHICH IS THE SUBJECT OF THIS ACTION IS CONSTITUTIONALLY VALID.

"III. THE TRIAL COURT ERRED IN FAILING TO GRANT THE TEMPORARY AND PERMANENT INJUNCTIVE RELIEF REQUESTED.

"IV. THE DECISION OF THE TRIAL COURT IS CONTRARY TO LAW.

"V. THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

On appeal, the Center to Prevent Handgun Violence Legal Action Project, Fraternal Order of Police of Ohio, Inc., and the Ohio Association of chiefs of Police collaborated on an amicus curiae brief. An *amicus curiae* brief was also filed by the Congress of Radical Equality, Inc.

In their first assignment of error, appellants assert that the trial court erred in holding that it lacked jurisdiction to question factual determinations made by the city in enacting an ordinance. Upon review, the record before this court on appeal is devoid of any such holding by the trial court. In an excerpt of a copy of the transcript of proceedings attached to appellants' brief, which cannot be considered as evidence before this court, the following statement of the trial court appears:

"THIS COURT CANNOT GO BEYOND AND GO BEHIND THE FACTUAL VALIDITY OF THE FINDINGS THAT COUNCIL HAS MADE FOR PURPOSES OF ADOPTING THE ORDINANCE AND IN ITS PREAMBLE. AND SINCE THE ORDINANCE IS PRESUMED TO BE VALID, THAN THE COURT CANNOT GO BEHIND THE FACTUAL FINDINGS THAT COUNCIL HAS MADE."

Contrary to appellants' assertion, the Supreme Court, in *Walker* v. *City of Cincinnati* (1871), 21 Ohio St. 14, 42, quoting Judge Cooley in his treatise on "Constitutional Limitations," stated:

"* * * But what is for the public good and what are public purposes, and what does properly constitute a public burden, *are questions which the legislature must decide upon its own judgment, and in respect to which it is vested with a large discretion which cannot be controlled by the courts*, except perhaps where its action is clearly evasive, and where, under pretense of a lawful authority, it has assumed to exercise one that is unlawful. Where the power which is exercised is legislative in its character, *the courts can enforce only those limitations which the constitution imposes, and not those implied restrictions, which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism, and sense of justice of their representatives.*" And he adds on page 171:

"Nor are the courts at liberty to declare an act void because, in their opinion, it is opposed to a *spirit* supposed to pervade the constitution but not expressed in words; - citing *People* v. *Fisher* 24 Wend. 220; *Cochran* v. *Van Surlay,* 20 Wend. 381; *People* v. *Gallagher,* 4 Mich.244; *Benson* v. *Mayor of Albany,* 24 Barb. 252; *Grant* v. *Courter,* 24 Barb. 232; *Wunehamer* v. *People,* 13 N.Y. 391." (Emphasis in original.)

Assumingly, in their first assignment of error, appellants are challenging the standard of review

that must be applied by the trial court in determining the validity of the ordinance. Since this analysis necessarily involves a discussion regarding the constitutionality of the ordinance, appellants' first and second assignments of error will be addressed together.

Legislative acts enjoy a strong presumption of constitutionality and any challenge must establish beyond a reasonable doubt that the enactment is unconstitutional. *Ohio Public Interest Action Group* v. *Pub. Util. Comm.* (1975), 43 Ohio St. 2d 175; *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142. The person challenging the legislation must show evidence that the legislation lacks the requisite nexus to its stated purpose. *Cincinnati* v. *Welty* (1980), 64 Ohio St. 2d 28. Thus, the issue in the first before this court is, whether the ordinance bears a real and substantial relation to a proper subject of municipal police power under Section 3, Article XVIII of the Ohio Constitution.

The stated purposes of the legislation are as follows:

"WHEREAS, Council has studied the effect of unregulated possession or sale of assault weapons, and

"WHEREAS, to protect the health, safety and welfare of its citizens and law enforcement officers it is in the best interest of the City of Columbus to ban the possession and sale of assault weapons, and require the registration and licensing of currently possessed assault weapons, and

"WHEREAS, Council finds that the primary purpose of assault weapons, as defined herein, is anti-personnel, and not for legitimate sporting, hunting, collecting, or target shooting purposes, and

"WHEREAS, to keep such assault weapons out of the hands of criminals, particularly drug traffickers, and to help prevent violence it is necessary to ban and regulate such weapons.

"WHEREAS, the ability to purchase firearms without delay or a waiting or cooling off period has contributed to the purchase of firearms after an incident where the purchaser is physically, mentally, or emotionally upset due to the incident, and

"WHEREAS, to avoid the purchase of firearms when the purchaser is physically, mentally, or emotionally upset due to an incident which may create a risk immediate unlawful use or risk of harm to other persons, it is in the best interest of the City to require a seven day waiting or cooling off period before a firearms purchase permit is issued, and

"WHEREAS, large capacity magazines may be used in an unregulated firearm which will accept such magazines, thus bringing such weapons within the ambit of the purpose of this Ordinance to regulate semi-automatic weapons that permit the firing of a large number of rounds at one time without reloading, it is in the interest of the City to regulate such magazines, now therefore."

Appellants assert that there was no evidence before city council supporting these stated purposes. However, this is not the focus in a judicial standard of review as set forth in *Welty*. It was incumbent upon the appellants, in challenging the presumption of constitutionality, to demonstrate that the ordinance lacked the requisite nexus to its stated purposes. See *Welty, supra.*

At the October 27, 1989 hearing, appellants' submitted a letter, dated April 25, 1988, from the City of Columbus Chief of Police, Dwight Joseph, to councilwoman Arlene Shoemaker. The letter was in reply to Shoemaker's request for a report of the police department's statistics on its narcotics data. Shoemaker specifically asked that the report include a listing of the firearms that had been confiscated from drug raids during the time period between April 1988 through April 1989. Appellants assert that since the report indicated that only six of the one hundred and seventy-nine weapons that had been confiscated appeared on the prohibited list set forth in the ordinance, that, in their viewpoint, the stated purposes bore no real or substantial relation to the public health, safety, morals, or general welfare. Thus, appellants argue the ordinance is unreasonable and arbitrary and should be held invalid.

In *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 110, the Supreme Court stated:

"Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals, or general welfare of the public, and whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and, unless the decision of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them. *State, ex rel. Standard Oil Co.,* v. *Combs, Dir.,* 129 Ohio St., 251, 194 N.E. 875; *City of Dayton* v. *S.S. Kresge Co.,* 114 Ohio St., 624, 151 N.E., 775, 53 A.L.R. 916; and *City of Cleveland* v. *Terrill,* 149 Ohio St., 532, 80 N.E. (2d), 115."

In their challenge to the ordinance's presumption of constitutionality, appellants presented no evidence to demonstrate that the assault weapons and large capacity magazines were used for legitimate sporting, hunting, collecting, or target shoot-

ing purposes. Furthermore, the mere fact that only six weapons, out of on hundred and seventy-nine weapons confiscated from drug raids during a given year appear on the prohibited list set forth in the ordinance, does not comprise the requisite level of evidence to invalidate the ordinance based on a challenge of its constitutionality. This statistical data does not negate a need for the legislation. To the contrary, one of the stated purposes of the legislation was to keep such assault weapons out of the hands of criminals, in particular drug traffickers. In submitting evidence that six of the prohibited assault weapons were confiscated during drug raids, appellants have only lent credence to this stated purpose. Also, the record contains a March 21, 1989 letter written by Chief of Police, Dwight Joseph to councilman John Kennedy, which expresses his concern for state and/or federal legislation to curtail the possession and sale of assault weapons. This letter would seem to contradict appellants' viewpoint that Chief Joseph was advocating that the circumstances in the city of Columbus did not warrant a need for such legislation. Accordingly, appellants' first assignment of error, and appellants' second assignment of error to the extent discussed herein, are not well-taken and are overruled.

In their third assignment of error, appellants assert that the trial court erred in failing to grant temporary and permanent injunctive relief. Civ. R. 65(A), regarding temporary injunctive relief, requires the complainant to show that:

"* * * (1) *[I]t clearly appears from specific facts shown* by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or his attorney can be heard in opposition * * *." (Emphasis added.)

Appellants' request for temporary and permanent injunctive relief was consolidated pursuant to Civ. R. 65(B)(2), and a hearing on the merits was held before the trial court, several days before the ordinance was to take effect. Upon review the appellants' failed to show from specific facts that they respectively would suffer immediate and irreparable injury from the enforcement of the ordinance. The appellants, Benjamin Jacoby, David Stockman, Richard Hale, Michael Monahan, R.P. Kelly, and Ronald Herman, each state in their a affidavits that they own and/or possess certain firearms and related equipment which will be banned by the ordinance. Jacoby, Stockman and Monahan are residents and need only comply with the registration requirements of Section 2(B) and (C) in order to escape any criminal prosecution as

a result of this ordinance. These registration sections provide:

"*Section 2. That Section 2323.05, Columbus City Codes, 1959, be enacted to read as follows:*

"(3) 2323.05 Unlawful Possession of Assault Weapons

"*(A) No person shall knowingly sell an assault weapon.*

"*(B) No person shall knowingly possess an assault weapon, unless that weapon is registered pursuant to paragraph C of this Section. It is intended to ban possession of assault weapons, unless lawfully possessed prior to the effective date of this ordinance, in which case such assault weapons must be registered.*

"*(C) Any person who lawfully possesses an assault weapon prior to September 30, 1989 shall register that firearm with the Department of Public Safety, License Section, between October 1, 1989 and October 30, 1989. The registration shall contain a description of the firearm that identifies it uniquely, including serial number, and the name, address, date of birth, photograph, criminal arrest record, and fingerprints of the owner, and such other information as required by regulation adopted by the Director of Public Safety. The Safety Director shall adopt regulations governing the issuance of a registration for assault weapons, and may refuse to register such weapon if not in accordance with such regulations. The owner of a registered assault weapon shall notify the Safety Director of a change of address within 30 days of same. The Safety Director may charge a $25.00 registration fee for assault weapons. A registered owner of an assault weapon may sell or transfer possession of an assault weapon to a gun dealer who has been issued a federal firearms license. A registered owner of an assault weapon shall notify the Safety Director within 30 days of the lawful sale or transfer of an assault weapon, and shall notify the Safety Director within 48 hours of the theft or disappearance of a registered assault weapon. An assault weapon possessed in violation of this ordinance, or not registered, is declared to be contraband and subject to forfeiture.*" (Emphasis added.)

Since the regulation of firearms has been held to be a valid exercise of the police powers, the registration requirement bears a real and substantial relationship to the purposes of safeguarding the public. See *Mosher* v. *Dayton* (1976), 48 Ohio St. 2d 243.

The appellants' Hale, Kelly and Herman are nonresidents and thus, the ordinance is not applicable to them. However, the wording of C.C. 2323.05(C) refers to "any person" and is not limit-

ed to "any resident." Therefore, it would appear that, as written, any nonresident could register his weapon with the Department of Public Safety, License Section, so as to escape any of the penalties set forth in the ordinance for the possession of an assault weapon within the city limits of Columbus.

Thus, this court upholds the trial court's determination regarding the constitutionality of the Columbus ordinance and its denial for temporary and permanent injunctive relief. Accordingly, the trial court properly denied appellants' request for temporary and permanent injunctive relief and thus appellants' third assignment of error is not well-taken and is overruled. Likewise, the trial court's decision is not against the manifest weight of the evidence and not contrary to law and thus, appellants' fourth and fifth assignments of error are not well-taken and are overruled.

Appellants' first, second, third, fourth and fifth assignments of error are not well-taken and are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and BRYANT, JJ., concur.

---

[1] "'Assault Weapon' means any of the following:

"1. All of the following specified rifles:

"1. Norinco, Mitchell and Poly Technologies Avtomat Kalashnikovs (all models).

"2. Action Arms Israeli Military Industries UZI and Galil.

"3. Beretta AR-70 (SC-70).

"4. CETME G3.

"5. Colt AR-15 and CAR-15.

"6. Daewoo K-1, K-2, Max 1 and Max 2.

"7. Fabrique Nationale FN/FAL, FN/LAR and FNC

"8. FAMAS MAS223.

"9. Heckler & Koch HK-91, H-93, HK-94, and PSG-1.

"10. MAC 10 and MAC 11.

"11. SKS with detachable magazine.

"12. SIG 57 AMT and 500 Series.

"13. Springfield Armory BM59 and SAR-48.

"14. Sterling MK-6 and SAR

"15. Steyr AUG.

"16. Valmet M62, M71S, and M78.

"* * *

"2. All of the following specified shotguns:

"A) Franchi SPAS 12 and LAW 12

"B) Gilbert Equipment Company Striker 12

"* * *

"3. All of the following specified pistols:

"(A) Action Arms UZI

"(B) Encom MP-9 and MP-45

"(C) MAC 10 and MAC 11

"(D) INTRATEC TEC-9 and TEC-22

"(E) Mitchell Arms Spectre Auto

"(F) Sterling MK-7

"* * *

"4. Other models by the same manufacturer with the same design that have slight modifications or enhancements of firearms listed in subparagraphs (1), (2), and (3), provided the caliber exceeds .22 rimfire." Emphasis in original.)

[2] "(H) 'Large Capacity Magazine' means a box, drum, clip or other container which holds more than twenty rounds of ammunition to be fed continuously into a semi-automatic firearm, except a magazine designed to hold only .22 caliber cartridges."