### CITY OF CLEVELAND

### v.

### CARPENTER.

2003-Ohio-7349.]

Cleveland Municipal Court, Ohio.

No. 2001 CRB 056654.

Decided Feb. 20, 2003.

78

Joan Bascone, Assistant City Prosecutor, for plaintiff.

Margaret Kanellis, for defendant.

MABEL M. JASPER, Judge.

{¶ 1} The court has before it defendant Robert Carpenter's motion for release of property filed December 26, 2002, and the city's objection to that motion, filed January 23, 2003. The case was set for hearing on January 29, 2003, before Magistrate William F.B. Vodrey. Present were counsel for the city and for defendant. Defendant was also present but did not testify.

{¶ 2} For the reasons stated below, defendant's motion is denied.

{¶ 3} It is undisputed that officers of the Cleveland Police Department ("CPD") seized eight firearms from defendant's home on or about December 26, 2001, after responding to a domestic complaint. Although defendant asserted in his motion that police seized nine weapons, the parties agreed at the January 29, 2003 hearing that there are only eight weapons at issue. On March 26, 2002, defendant pled no contest to misdemeanor assault under Cleveland Codified Ordinances ("C.C.O.") 621.03, and was found guilty. He now asks the city to return his weapons to him. The parties agreed that this court may properly consider defendant's motion on its merits and that it need not necessarily be brought under the replevin statute, R.C. 2737.01 et seq.

{¶ 4} The Fourth Amendment to the United States Constitution provides:

{¶ 5} "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

{¶ 6} The Fourteenth Amendment to the United States Constitution provides:

{¶ 7} "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

{¶ 8} The Fourth Amendment applies to the states through the Fourteenth Amendment. *State v. Orr* (2001), 91 Ohio St.3d 389, 745 N.E.2d 1036; *State v. Delagraza* (2001), 144 Ohio App.3d 474, 478, 760 N.E.2d 860.

{¶ 9} Although CPD acted reasonably in seizing the eight weapons at the time of defendant's arrest, the guns are no longer needed as evidence now that defendant has entered a plea, and the city has not filed for forfeiture. Defendant was neither charged with, nor convicted of, a weapons offense. He is not presently under any state statutory disability. R.C. 2923.13.

{¶ 10} This, however, does not end the court's inquiry. The city argues that CPD seized the weapons under C.C.O. 627.11(a), which provides that "[i]n any situation where a deadly weapon is present and a person has been * * * disturbing the peace, threatening bodily harm or causing or threatening a disturbance of violence, and there is reasonable cause for the investigating police officer to believe that such deadly weapon may be used to cause bodily harm, such deadly weapon may be seized by the police and kept in the custody of the Chief of Police until released by an order of a court of competent jurisdiction."

{¶ 11} The court is satisfied that the officers in this case acted within the letter and spirit of C.C.O. 627.11(a), and the parties agree that this court is a "court of competent jurisdiction" to decide this matter.

{¶ 12} The city also points to C.C.O. 627.11(b), which provides that "[a]ny deadly weapon seized by a police officer upon the arrest of any person * * * charged with * * * any felony or misdemeanor involving the use of a deadly weapon or the use of force or violence or the threat of the use of force or violence against the person of another, shall be confiscated.* * * for disposal."

{¶ 13} The victim, defendant's ex-wife Cynthia Carpenter, told CPD officers that, when she went to pick up the couple's baby, defendant punched her in the face "so hard that it knocked [her] to the ground." He then threatened to kill her, and she called police. Upon their arrival, the officers observed that Ms. Carpenter was "bleeding from her mouth [and] was shaken and scared." She told them that defendant has, in the past, "put a gun up to the son of the victim's head and threatened to shoot and kill him." Ms. Carpenter also said that defendant "is always threatening to kill and harm her." Defendant was initially

charged with domestic violence under R.C. 2919.25, a misdemeanor of the first degree (the couple, although divorced, were still cohabiting). As noted above, defendant ultimately pled no contest to assault under C.C.O. 621.03, which is also a misdemeanor of the first degree, and was found guilty.

{¶ 14} The court believes that, under its plain language, C.C.O. 627.11(b) is applicable here. Based upon the victim's statement to police, made soon after the commission of the offense, and the CPD officers' own observations, it is clear that defendant used "force or violence or the threat of the use of force or violence" against her. He was arrested and later charged with a misdemeanor crime, and the initial retention of defendant's weapons by the city was therefore lawful. But is it lawful still, and is he now entitled to the weapons' return?

{¶ 15} The city argues that it is prohibited under C.C.O. 674.02(c) and (d) from returning the weapons to him. These ordinances require that anyone possessing a "handgun" in the city have a valid identification card and a registration card for each handgun. Not all of defendant's weapons are handguns; at least three clearly are not. See City of Cleveland's Objection to Defendant's Motion for Release of Property, Memorandum at 1, fn. 1 (referring to Item 3, a "12 caliber shot gun"; Item 5, a "7.62 caliber rifle"; and Item 7, a "24[-inch] REM Rifle"). The city contends that the registration of these weapons has expired. Although defendant, through counsel, denied this, he introduced no evidence to counter the city's assertion, nor did he show that he had or has the requisite registration cards. The CPD incident report that defendant attached to his motion is either silent as to the registration status of these weapons or, as to both Item 4 (a Wesson .22 caliber pistol) and Item 6 (a Llama/Super Commanche .44 caliber pistol) indicates that the weapons' registration expired on January 27, 1989. The court has no evidence before it to show that any of the weapons seized have currently valid registration. A complaint of unlawful detention of property puts in issue not only the facts of the detention but also the complainant's right of possession and property. *Kelly v. Blakely* (1860), 2 Ohio Dec.Rep. 378, 1860 WL 4776.

{¶ 16} The Supreme Court of Ohio has held that the right to bear arms "is not an unlimited right and is subject to reasonable regulation." *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 47, 616 N.E.2d 163. Regulating firearms is a valid exercise of a municipality's police power, since such regulations bear a real and substantial relationship to the purposes of safeguarding the public. *Mosher v. Dayton* (1976), 48 Ohio St.2d 243, 2 O.O.3d 412, 358 N.E.2d 540; *Hale v. Columbus* (1990), 63 Ohio App.3d 368, 376, 578 N.E.2d 881; *E. Cleveland v. Scales* (1983), 10 Ohio App.3d 25, 10 OBR 32, 460 N.E.2d 1126. The Cleveland firearms ordinance, in particular, has been found by the Supreme Court to be "a proper exercise of the police power under Section 3, Article XVIII of the Ohio

Constitution." *Arnold,* supra. Moreover, it "is a reasonable exercise of the police power to require non-residents, as well as residents, to possess an identification card" to lawfully possess a firearm within that city. *University Hts. v. O'Leary* (1981), 68 Ohio St.2d 130, 135, 22 O.O.3d 372, 429 N.E.2d 148. See, also, *Cincinnati v. Langan* (1994), 94 Ohio App.3d 22, 29, 640 N.E.2d 200. Defendant is clearly not entitled to the return of weapons that were never lawfully registered or whose registration has expired.

{¶ 17} The city also argues that, by operation of federal law, defendant may not have the eight firearms returned to him. This court is clearly bound by federal law. Under the Supremacy Clause, United States Constitution, Clause 2, Article VI:

{¶ 18} "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land."

{¶ 19} The Brady Law, Section 922, Title 18, U.S.Code, prohibits a person "convicted in any court of a misdemeanor crime of domestic violence" from possessing or receiving a firearm. Section 922(g)(9). The Brady Law defines the term "misdemeanor crime of domestic violence" as an offense that (i) is a misdemeanor under federal or state law; and (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent or guardian, or by a person similarly situated to a spouse, parent or guardian of the victim. Section 921(a)(33)(A).

{¶ 20} The Cleveland misdemeanor assault ordinance does not have as "an element" of the offense that the crime was "committed by a * * * former spouse * * * of the victim, [or] by a person with whom the victim shares a child in common, [or] by a person with whom the victim is cohabiting." However, in reviewing legislative intent, many federal courts have held that state misdemeanor crimes of violence, such as simple assault, need not have a domestic relationship as an element of the offense in order to disqualify a defendant from possessing firearms under the Brady Law. See *United States v. Barnes* (C.A.D.C. 2002), 295 F.3d 1354, rehearing and rehearing en banc denied (Nov. 4, 2002); *United States v. Denis* (C.A.1, 2002), 297 F.3d 25, 30–31; *United States v. Kavoukian* (C.A.2, 2002), 315 F.3d 139; *United States v. Nason* (C.A.1, 2001), 269 F.3d 10; *United States v. Chavez* (C.A.11, 2000), 204 F.3d 1305, 1313–1314; *United States v. Meade* (C.A.1, 1999), 175 F.3d 215; *United States v. Smith* (C.A.8, 1999), 171 F.3d 617; *United States v. Blosser* (Oct. 4, 2002), D.Kans. No. 02–40074–01–JAR, 2002 WL 31261170, 2002 WL 31261170; see, also, *United*

*States v. Ball* (C.A.4, 2001), 7 Fed. Appx. 210, 213, 2001 WL 324624 (unpublished per curiam order), certiorari denied (2001), 534 U.S. 900, 122 S.Ct. 226, 151 L.Ed.2d 162.

■ {¶ 21} It is axiomatic that a "statute should ordinarily be read to effectuate its purposes rather than frustrate them." *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. Ruckelshaus* (C.A.D.C.1983), 719 F.2d 1159, 1165, quoted in *Barnes,* supra, 295 F.3d at 1364. The Brady Law reflects Congress's strong desire to keep guns out of the hands of violent criminals and should be read accordingly. This court agrees with the approach of the federal courts cited above.

■ {¶ 22} During the January 29, 2003 hearing, defendant, through counsel, complained that he had not been informed that a plea to misdemeanor assault would disqualify him to possess firearms under the Brady Law. Although Crim.R. 11(C) requires a court to determine that a defendant understands the effect of his plea and the maximum penalty that could be imposed for the crime to which he is pleading, it does not require the court to inform him of every possible consequence of the plea. *State v. Stewart* (1977), 51 Ohio St.2d 86, 5 O.O.3d 52, 364 N.E.2d 1163. Moreover, a state court has no obligation to inform a defendant of the federal consequences of a state conviction. *Denis,* supra, 297 F.3d at 32.

{¶ 23} Defendant primarily relies on two Ohio appellate cases in support of his motion. As an unpublished opinion issued before May 1, 2002, *Walton Hills v. Asta* (Aug. 24, 2000), Cuyahoga App. No. 77361, 2000 WL 1222020, is not controlling case law. See S.Ct.R.Rep.Op. 4, effective May 1, 2002. Even on its merits, however, the case is distinguishable. Asta made a drunken threat to his estranged wife that "it would be cheaper [for him] to shoot" her than to get a divorce. By contrast, there is no reason to believe that Carpenter's threats were anything but in earnest, in light of his violent behavior. Asta and his wife eventually reconciled, and his wife filed an affidavit in support of defendant's motion for the return of his eight (coincidentally enough) guns. No such affidavit is before the court in this case, and there was no testimony as to the current status of Carpenter's relationship with his ex-wife. The city argues that she is still in danger from defendant and, given their past relationship, that is clearly a realistic concern. Applying an abuse-of-discretion standard, the court of appeals in *Walton Hills* noted that defendant's motion was unopposed by the city; that is not the case here. Accordingly, *Walton Hills* is distinguishable and unpersuasive.

{¶ 24} Defendant also cites *Bernad v. Lakewood* (2000), 140 Ohio App.3d 350, 747 N.E.2d 838, discretionary appeal not accepted (2001), 91 Ohio St.3d 1245, 745 N.E.2d 432, which is controlling but also distinguishable. Bernad was under a

preexisting legal disability due to a felony conviction for carrying a concealed weapon, which is not a "crime of violence" under Ohio law. He subsequently applied for, and was granted, an expungement under R.C. 2953.32. This removed his legal disability. In opposing Bernad's motion for the return of his collection of 29 firearms, Lakewood did not assert any legal basis to withhold them other than Bernad's by-then-removed disability. That is not the case here.

{¶ 25} Defendant eschewed any constitutional arguments for the return of his guns. Even if he had, " ' "Ohio law abounds with precedent to the effect that constitutional issues should not be decided unless absolutely necessary." ' " *Mayer v. Bristow* (2000), 91 Ohio St.3d 3, 9, 740 N.E.2d 656, quoting *Ohioans for Fair Representation, Inc. v. Taft* (1993), 67 Ohio St.3d 180, 183, 616 N.E.2d 905, in turn quoting *Hall China Co. v. Pub. Util. Comm.* (1977), 50 Ohio St.2d 206, 210, 4 O.O.3d 390, 364 N.E.2d 852. Courts should not reach constitutional issues where a case is capable of resolution on other grounds. *In re Miller* (1992), 63 Ohio St.3d 99, 110, 585 N.E.2d 396; *In re Boggs* (1990), 50 Ohio St.3d 217, 221, 553 N.E.2d 676; *State v. Kawaguchi* (2000), 137 Ohio App.3d 597, 610, 739 N.E.2d 392. This is such a case.

{¶ 26} The goal of justice is embodied in the ancient Latin phrase, *Suum cuique tribuere*—to render to each man his due. This court must weigh "the gravity of the public concerns served by [a] seizure [and] the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Michigan Dept. of St. Police v. Sitz* (1990), 496 U.S. 444, 457, 110 S.Ct. 2481, 110 L.Ed.2d 412; see, also, *Brown v. Texas* (1979), 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357. For the reasons set forth above, including the very real public-safety concerns that the city notes, the court believes that it would be both unlawful and inappropriate for Carpenter to be given back his eight weapons.

Motion denied.