**DANIELS**

v.

**CITY OF CLEVELAND.**

2007-Ohio-7268.]

Cleveland Municipal Court, Ohio.

No. 2006 CVI 29638.

Decided Feb. 22, 2007.

Sabrina Daniels, pro se.

Robert J. Triozzi, Cleveland Law Director, and Catherine Ma, Assistant Law Director, for defendant.

PAULINE H. TARVER, Judge.

{¶ 1} On December 1, 2006, Magistrate William F.B. Vodrey presided over the trial in this case. Present were both plaintiff and defendant's witness, Gary Kopper. Both witnesses were duly sworn. The court subsequently adopted and approved the magistrate's decision, and overruled plaintiff's objection.

FINDINGS OF FACT

{¶ 2} On the morning of July 15, 2006, plaintiff parked her 1996 Lexus SC400 coupe at 7812 Superior Avenue, Cleveland. She was in a nearby beauty salon when she learned that an electrical fire had damaged her car, which was parked beneath an electrical distribution line maintained by Cleveland Public Power ("CPP"), a public utility wholly owned and operated by defendant.

{¶ 3} Plaintiff got two repair estimates. DCS Systems estimated that fixing the damage to her car would cost $2,781.34, while Rex Body & Fender offered to do the job for $2,776.60. Plaintiff did not submit an insurance claim after her insurer, State Farm, suggested that she sue defendant instead.

{¶ 4} Gary Kopper, CPP's chief superintendent of transmission and distribution, testified that the fire was the result of two catastrophic blown fuses on an electrical-distribution line. About 20 CPP customers in the area lost electrical power for an hour as a result of the fire, but no other vehicle or property was damaged. Fuses such as those at issue in this case typically last about a decade. However, the two fuses that failed and caused a fire had been installed less than a year before, in August 2005. Careful examination of the fuses by CPP staff later revealed no cause for their failure, which Kopper described as "rare."

{¶ 5} Plaintiff now seeks $2,781.34, the higher of the two repair estimates.

CONCLUSIONS OF LAW

{¶ 6} At trial, a court must determine the credibility of witnesses and the weight to be given the evidence. *In re Lieberman* (1955), 163 Ohio St. 35, 56 O.O. 23, 125 N.E.2d 328; *Bowlin v. Black & White Cab Co.* (1966), 7 Ohio App.2d 133, 36 O.O.2d 288, 219 N.E.2d 221. The quality of evidence is more important than its quantity. If trial testimony or other evidence is in conflict, the court must decide which to believe and which to disbelieve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Both of the witnesses were generally credible.

{¶ 7} At trial, plaintiff simply argued that since her car was damaged by a fire on a CPP line, defendant was liable, and she was entitled to damages. Defendant admitted that plaintiff's car was damaged but denied that it was liable. Defendant noted that R.C. 2744.02(A)(1) offers general immunity to Ohio's political subdivisions such as defendant. The only one of five exceptions to the statute

that might be applicable here, R.C. 2744.02(B)(2), pertains to proprietary functions such as CPP's generation and distribution of electrical power, but counsel for defendant persuasively argued that unless actual negligence is shown, defendant cannot be held liable for damages in this case.

{¶ 8} Sovereign immunity is rooted in English common law and the ancient concept that "the king can do no wrong." The king, ruling by divine right and subject to the authority of no court, was above the law and could not be sued. No one could obtain relief through judicial process from an act of the king or his officers, even an act that would be tortious if committed by one of his subjects. *Haas v. Hayslip* (1977), 51 Ohio St.2d 135, 140, 5 O.O.3d 110, 364 N.E.2d 1376. The doctrine of sovereign immunity survived in American legal theory even after the United States declared its independence from Great Britain in 1776. It was accepted and adapted by state courts in the early days of the republic, and was first applied in Ohio in *State v. Franklin Bank of Columbus* (1840), 10 Ohio 91. It was expanded to include political subdivisions such as cities in *Dayton v. Pease* (1854), 4 Ohio St. 80.

{¶ 9} A quarter-century ago, the Supreme Court of Ohio reviewed the evolution of sovereign immunity and found that it was obsolete and undemocratic and wrongly denied relief to innocent parties. Noting that it had been judicially created in Ohio in the first place, the Supreme Court judicially abolished it in *Haverlack v. Portage Homes* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. However, like Dr. Frankenstein's monster, the doctrine was raised from the dead by the General Assembly in 1985, when it passed the Political Subdivision Liability Act, R.C. 2744.01 et seq. In *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 750 N.E.2d 554, the Supreme Court revisited the issue and reluctantly found that the rule of sovereign immunity was still valid in Ohio but warned, "[A]pplying such broad immunity to governmental wrongdoers gives no encouragement to do right, and no liability or penalty for doing wrong. Where there is no accountability for failure, failure is sure to follow." *Butler*, 92 Ohio St.3d at 374, 750 N.E.2d 554. The majority also noted that exceptions to the rule threatened to swallow the rule itself.

{¶ 10} A municipal corporation such as the city of Cleveland is a political subdivision as defined by R.C. 2744.01(F). It is thus afforded limited immunity from tort liability under R.C. 2744.01 et seq. The functions of a city are classified as either governmental or proprietary. Cities enjoy blanket immunity for tort liability concerning governmental functions. R.C. 2744.02(A)(1); *Akron ex rel. Christman–Resch v. Akron* (2005), 159 Ohio App.3d 673, 687, 825 N.E.2d 189. A governmental function is one that is "imposed upon the state [or subdivision] as an obligation of sovereignty," promotes the common good of all citizens, including the preservation of public peace, safety, and health, and typically is not engaged

in by nongovernmental actors. R.C. 2744.01(C)(1); see also *Copeland v. Cincinnati* (2005), 159 Ohio App.3d 833, 825 N.E.2d 681.

{¶ 11} Defendant stipulated that its operation of CPP is a proprietary function, that is, it is essentially optional and not imposed as a duty upon every municipality, although nevertheless providing a benefit to residents. The Revised Code defines proprietary functions as including "the establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power or heat plant." R.C. 2744.01(G)(2)(c). CPP has been recognized by Ohio courts as carrying out proprietary functions for Cleveland. *Stickovich v. Cleveland* (2001), 143 Ohio App.3d 13, 757 N.E.2d 50. The Supreme Court of Ohio has held, "[W]here negligence revolves around the question of the existence of a hazard or defect, the legal principle prevails that notice, either actual or constructive, of such hazard or defect is a prerequisite to the duty of reasonable care." *Heckert v. Patrick* (1984), 15 Ohio St.3d 402, 405, 15 OBR 516, 473 N.E.2d 1204.

{¶ 12} In *Ugri v. Cleveland* (September 1, 1994), Cuyahoga App. No. 65737, 1994 WL 476377, an electrical arc from a CPP pole shocked a woman and electrocuted her dog as they walked near the pole in a rainstorm. The Court of Appeals of Cuyahoga County affirmed the trial court's granting of summary judgment to the city, ruling that plaintiff had made no showing of negligence that would overcome the city's statutory defenses under R.C. 2744.01 et seq. An unpublished appellate opinion issued before May 1, 2002, is not controlling case law. See S.Ct.R.Rep.Op. 4; *Cleveland v. Carpenter* (2003), 126 Ohio Misc.2d 77, 803 N.E.2d 871. Nevertheless, *Ugri* is factually similar to the case now before this court and is highly persuasive.

{¶ 13} Under Ohio law, defendant is immune from liability if injury or damage is caused by its choices in acquiring or using equipment, supplies, personnel, "or other resources." R.C. 2744.03(A)(5). The court is persuaded that defendant, city of Cleveland, exercising a proprietary function through CPP, properly used its discretion in selecting and installing the fuses. It had no notice, either actual or constructive, of a potential problem with the fuses. It is regrettable that plaintiff's car was damaged. But defendant was not negligent, as plaintiff herself conceded at trial, and plaintiff has not shown liability.

{¶ 14} Plaintiff has failed to prove her case by a preponderance of the evidence. Accordingly, judgment is granted for defendant.

{¶ 15} It is so ordered.

*Judgment accordingly.*