This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Heather Ross, appeals her conviction in the Akron Municipal Court. We affirm.
 I.
On May 7, 2000, Mr. Benjamin Allen returned from attending church with his family to their residence at 458 Adkins in Akron, Ohio. They changed clothes and Mr. Allen's wife asked one of their children, Michael to go into their backyard, which was enclosed by a fence, and retrieve their dog which was chained within the fenced enclosure. Mr. Allen stopped his son as he noticed another dog had entered their enclosed backyard and he was concerned for his son's safety. Both Mr. Allen's dog and the intruding dog appeared to be Chow dogs. Mr. Allen's dog, a female, apparently was in heat at that time. Mr. Allen entered his backyard to retrieve his dog. While attempting to reach his own dog to release it from its chain, the other dog leaped upon Mr. Allen, biting him several times on and about the face. His own dog, still chained, could not reach Mr. Allen or come to his aid. Mr. Allen's wife then retrieved a brick and gave it to Mr. Allen. After Mr. Allen struck the intruding dog repeatedly, it retreated to behind Mr. Allen's garage. Mr. Allen and his family retreated into their home and summoned the police.
After a twenty to thirty minute wait, two police officers and the local animal control officer arrived. The intruding dog was captured and taken away. Mr. Allen spoke to the police officers and then went to the hospital for treatment. Several months later, Mr. Allen's dog, a purebred Chow, gave birth to a litter of puppies some of which appeared to be of mixed bread. The intruding dog belonged to Ms. Ross.
On May 9, 2000, Ms. Ross was served with a complaint and summons charging her with failing to register her dog, in violation of Akron City Code 92.08, and owning, harboring, or otherwise possessing a dog which bit a person while "off the premises of the owner," in violation of Akron City Code 92.25(B)(4). On the same day, the officer who issued the complaint and summons filed a sworn complaint with the clerk of the Akron Municipal Court. Ms. Ross pleaded guilty to the charge of failing to license her dog on October 18, 2000. A jury trial commenced the same day on the remaining charge. Apparently, the jury returned its verdict on the same day.[1] The jury's verdict was duly entered and journalized by the trial court on October 18, 2000. Ms. Ross was sentenced accordingly; the sentence was stayed pending the outcome of her appeal. This appeal followed.
 II.
Ms. Ross asserts nine assignments of error. We will address each in due course, consolidating her fifth and eighth, as well as her sixth and seventh assignments of error to facilitate review.
 CONSTITUTIONAL QUESTIONS
Our standard of review was articulated in Akron v. Parrish (Mar. 10, 1982), Summit App. No. 10385, unreported, at 2-3:
 It is well settled that legislative enactments benefit from a strong presumption of constitutionality. In construing legislative enactments, the courts are bound to avoid an unconstitutional construction if it is reasonably possible to do so. Moreover, one who challenges the constitutionality of a legislative enactment bears the burden of proving its invalidity "beyond a reasonable doubt."
(Citations omitted.)
The Ohio Supreme Court extols the wisdom of not deciding constitutional issues unless absolutely necessary. See, e.g., In re Mental Illness ofBoggs (1990), 50 Ohio St.3d 217, 221; Hall China Co. v. Pub. Util. Comm.
(1977), 50 Ohio St.2d 206, 210.
Accordingly,
 [w]e limit our inquiry to the constitutionality of the statute as applied in this case pursuant to the prudential rule of judicial self- restraint established by the [United States] Supreme Court which requires courts to limit their constitutional scrutiny of statutes to the particular facts of each case. The Supreme Court characterizes this rule as an element of standing to raise constitutional questions. * * * The prudential doctrine of juridical self-restraint which we apply here is "separability" when possible, we must narrowly read a statute to be constitutional as applied to the facts of the case before us and cannot consider other arguably unconstitutional applications of the statute.
(Citations omitted.) United States v. Lemons (C.A.8, 1983), 697 F.2d 832,834-35.
 A. First Assignment of Error
AKRON CITY CODE 92.25(B)(4) CONTROL OF DOGS IS IN CONFLICT WITH R.C.955.221, R.C. 955.22, AND R.C. 955.99 AND IS INCONSISTENT WITH SECTION 3 ARTICLE XVII [sic] OF THE OHIO CONSTITUTION (HOME RULE AMENDMENT), AND THEREFORE VIOLATES STATUTORY AS WELL AS STATE AND FEDERAL CONSTITUTIONAL GUARANTEES.
Ms. Ross avers that Akron City Code 92.25(B)(4) impermissibly conflicts with R.C. 955.221, R.C. 955.22, and R.C. 955.99 under Section 3, ArticleXVIII of the Ohio Constitution, also known as the Home Rule Amendment. Essentially, Ms. Ross makes three arguments: (1) the Akron statute impermissibly conflicts in that a violation of it is a first degree misdemeanor, rather than, as the Revised Code provides, a minor misdemeanor; (2) the Akron statute impermissibly conflicts in that it makes criminal what the Revised Code allows, namely a dog's first bite when the dog is not classified as a vicious dog; (3) the Akron statute impermissibly conflicts as it imposes criminal liability for acts which would result in only civil liability under the Revised Code. We disagree.
Section 3, Article XVIII of the Ohio Constitution, the Home Rule Amendment, provides that: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and similar regulations, as are not in conflict with general laws."
The statute at issue here provides:
 (B) Any person owning, keeping, possessing, harboring, maintaining, or having the care, custody, or control of a dog shall be strictly liable if such dog is found to:
 (1) Be at large within the city unless securely attached upon a leash held in the hand of a person in a manner which continuously controls the dog.
 (2) Snap at or attempt to bite or attempt to cause physical harm to any other person, domestic animal, or feline, while the dog is off the premises of the owner, or while on premises which are not exclusively controlled by the owner.
 (3) Cause physical harm to the property of another while the dog is off the premises of the owner, or while on premises which are not exclusively controlled by the owner.
 (4) Bite or otherwise cause physical harm to any person, domestic animal, or feline, while the dog is off the premises of the owner, or while on the premises which are not exclusively controlled by the owner.
 (5) Bite or otherwise cause physical harm to mail carriers, utility workers, City of Akron employees, delivery persons, or any police or emergency persons while the dog is on the premises of the owner or the premises under the control of the owner.
(C) Defenses.
 (1) It shall be an affirmative defense to a violation of § 92.25(B) that the dog was:
 (a) Securely confined in an automobile or cage which was adequately ventilated.
(b) Being used for lawful hunting purposes.
 (c) Being exhibited at a public dog show, zoo, museum, or public institution.
 (d) Engaged in any activity expressly approved by the laws of the state.
 (2) No public law enforcement agency or member thereof, or a licensed private law enforcement agency or member thereof, shall be convicted of any violation of this section where the dog is owned by the agency and being utilized for law enforcement purposes.
* * *
 (F) In order to prevent annoyance or injuries to the public health, safety, repose or comfort, divisions 92.25(B), (D), and (E) are strict liability offenses.
Akron City Code 92.25. "Whoever violates any provision of §§ 92.24, 92.25(B)(4), or 92.25(D) is guilty of a misdemeanor of the first degree." Id. at 92.99(G).
The Ohio Revised Code provides that "[a] municipal corporation may adopt and enforce ordinances to control dogs within the municipal corporation that are not otherwise in conflict with any other provision of the Revised Code." R.C. 955.221(B)(3). Further, one found guilty of a violation of "any resolution or ordinance adopted under this section," R.C. 955.211(C), "is guilty of a minor misdemeanor," R.C. 955.99(I). Ms. Ross first asserts that, as the Ohio Legislature classifies violations of city dog control ordinances as minor misdemeanors, a city may not classify such violations as first degree misdemeanors.
Our analysis is controlled by the Ohio Supreme Court's decision inNiles v. Howard (1984), 12 Ohio St.3d 162, 165:
 When a municipal ordinance varies in punishment with the state statute such ordinance is not in conflict with the statute when it only imposes a greater penalty. If the [city] ordinance had altered the degree of punishment to a felony rather than a misdemeanor it would have been unconstitutional. However, since the ordinance only increased the penalty from a lesser misdemeanor to a first degree misdemeanor, it is not in conflict with the general laws of Ohio.
The Revised Code provides that violations of municipal dog control ordinances are minor misdemeanors. R.C. 955.221(C) and 955.99(I). However, Akron City Code 92.25(B)(4) and 92.99(G) provide that a violation is a first degree misdemeanor. As the Ohio Supreme Court held in Niles, increasing the penalty of an offense from a lesser misdemeanor to a first degree misdemeanor does not violate the Home Rule Amendment. Accordingly, we conclude that increasing the penalty from a minor misdemeanor to one of the first degree does not violate the Home Rule Amendment. See Cleveland Hts. v. Wood (1995), 107 Ohio App.3d 616, 619.
Next, Ms. Ross avers that Akron City Code 92.25(B)(4) conflicts with the general laws of Ohio in that it makes criminal that which is permissible under the R.C. 955.99(E), (F) and (G), namely the first bite of a dog, other than a vicious dog. However, we do not find this to be so as the Revised Code simply does not provide a penalty for the first bite of a dog; it does not permit or encourage it. "In determining whether an ordinance is in `conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." Struthers v. Sokol (1923),108 Ohio St. 263, paragraph three of the syllabus. Moreover, under R.C.955.221(3), a municipal corporation is specifically authorized to adopt dog control ordinances which are not in conflict with "any other provision of the Revised Code." We can discern no conflict here[2] as the Revised Code simply does not speak to the issue of the first bite of a non-vicious dog; rather, this issue is left to be resolved by local enactment pursuant to R.C. 955.221.
Finally, Ms. Ross argues that Akron City Code 92.25(B)(4) is in conflict with R.C. 955.28(B), in that R.C. 955.22 provides for civil liability stemming from a dog bite while Akron City Code 92.25(B)(4) provides for criminal liability for the same type of action. To that end, Ms. Ross cites State v. Rosa (1998), 128 Ohio App.3d 556. In Rosa, the court applied Toledo v. Best (1961), 172 Ohio St. 371, syllabus, which holds that "[w]here the only distinction between a state statute and a municipal ordinance, proscribing certain conduct and providing punishment therefore, is as to the penalty only but not to the degree (misdemeanor or felony) of the offense, the ordinance is not in conflict with the general law of the state." However, in Rosa, the appellate court's analysis did not include a specific grant of power to the municipality, while R.C. 955.221 specifically provides for municipalities to adopt and enforce dog control ordinances. Further, R.C. 955.28
applies in different circumstances than Akron City Code 92.25(B)(4). Liability under R.C. 955.28 is not limited to situations occurring off of the dog owner's property, as happened here. Moreover, as the conduct is different and arguably more culpable in the instant case, from the conduct upon which civil liability is predicated, we conclude that the Akron City Code does not conflict with the civil remedy but only adds a criminal penalty in certain circumstances. Hence, as the statutes apply in different circumstances, we conclude that the civil liability provided for in the Revised Code does not conflict with the criminal liability imposed in the Akron City Code. Accordingly, we find Ms. Ross's arguments unpersuasive, as Akron City Code 92.25(B)(4), as applied to Ms. Ross, does not conflict with the cited provisions of the Revised Code. Ms. Ross's first assignment of error is overruled.
 B. Second Assignment of Error
A.C.C. 92.25(B)(4) CONTROL OF DOGS IS UNCONSTITUTIONALLY VAGUE AND OVERBROAD IN VIOLATION OF STATE AND FEDERAL DUE PROCESS GUARANTEES.
Ms. Ross argues that, in violation of her right to due process of law, Akron City Code 92.25(B)(4) is vague and overbroad. Hence, she avers that the statute is unconstitutional. We disagree.
"The doctrines of vagueness and overbreadth are not always distinguishable and often overlap." State v. Young (1980),62 Ohio St.2d 370, 385. In differentiating the doctrines of vagueness and overbreadth, the Ohio Supreme Court, quoting the United States Supreme Court, has stated: "`[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined,' whereas, `[a] clear and precise enactment may nevertheless be overbroad, if in its reach it prohibits constitutionally protected conduct.'" (Citation omitted.) Id.
The void for vagueness doctrine, as enunciated by the United States Supreme Court and recited by the Ohio Supreme Court holds that
 "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. * * * Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. * * * Third, but related, where a vague statute `abut[s] upon sensitive areas of basic First Amendment freedoms,' it operates to inhibit the exercise of [those] freedoms.'"
(Alterations original and citation omitted.) Akron v. Rowland (1993),67 Ohio St.3d 374, 381.
The definition of overbreadth utilized by the United States Supreme Court, as stated by the Ohio Supreme Court, is that "`[a] clear and precise enactment may * * * be `overbroad' if in its reach it prohibits constitutionally protected conduct.'" (Second alteration original and citation omitted.) Id. at 387. When faced with a challenge to the constitutionality of a statute based upon overbreadth,
 the court must decide "whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteen Amendments."
 "Only a statute that is substantially overbroad may be invalidated on its face." In order to demonstrate facial overbreadth, the party challenging the enactment must show that its potential application reaches a significant amount of protected activity. Nevertheless, criminal statutes "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." A statute is substantially overbroad if it is "susceptible of regular application to protected expression."
(Citations omitted.) Id.
Ms. Ross avers that Akron City Code is void for vagueness because the prohibited conduct is not clear. She asserts that when a stray dog proceeds onto one's property, not invited or encouraged, one "possesses" the dog under the terms of Akron City Code 95.25(B)(4). Hence, if, after that point, the dog continues to travel and harms a person, domestic animal, or feline, the party across whose property the dog traveled would be guilty under this statute. Therefore, she asserts that the conduct prohibited under the statute is unclear. However, Ms. Ross's conviction does not rest upon such a factual predicate.
 [O]ne who has received fair warning of the criminality of his own conduct from the statute in question is [not] entitled to attack it because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit. One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.
Parker v. Levy (1974), 417 U.S. 733, 756, 41 L.Ed.2d 439, 458. Hence, as the statute is clear as to Ms. Ross's conduct, she may not challenge it on the basis of vagueness in regard to a hypothetical situation.
Next, Ms. Ross avers that Akron City Code is overbroad as "`in its reach it prohibits constitutionally protected conduct.'" To that end, Ms. Ross notes the special relationship between humans and dogs. However, this court has previously held that "[a]lthough the relationship between an owner and man's best friend may indeed be a special one, this Court cannot find that ownership of a canine rises to the level of constitutional proportion to be declared a fundamental right." CuyahogaFalls v. Vogel (Sept. 16, 1998), Summit App. No. 18826, unreported, at 6. Further, the statute does not prohibit owning dogs or having them in one's home; it prohibits allowing one's dog to roam free and provides an increased penalty if one's dog does harm while so roaming. Akron City Code 92.25(B). Hence, we cannot find that this statute prohibits constitutionally protected conduct, and therefore, is overbroad. Ms. Ross's second assignment of error is overruled.[3]
 C. Third Assignment of Error
A.C.C. 92.25(B)(4) CONTROL OF DOGS AS WRITTEN AND AS APPLIED VIOLATES THEEIGHTH AMENDMENT PROSCRIPTION AGAINST CRUEL AND UNUSUAL PUNISHMENT.
Ms. Ross asserts that the punishment for violating Akron City Code 92.25(B)(4) is so disproportionate to the conduct it prohibits that it shocks the sense of justice of the community, and therefore, constitutes cruel and unusual punishment. Hence, she asserts that the statute is unconstitutional pursuant to the Eighth Amendment to the United States Constitution. We disagree.
As this court has previously held, "[t]o warrant constitutional intercession, `the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.'" State v.Framback (1992), 81 Ohio App.3d 834, 842; accord State v. Weitbrecht
(1999), 86 Ohio St.3d 368, 371; State v. Barnes (2000),136 Ohio App.3d 430, 435 ("In light of Harmelin, the state of the law is that if a comparison of the `gravity of the offense and the harshness of the penalty' under the first element of Solem does not give rise to an inference of gross disproportionality, then the `comparative analysis with other sentences,' pursuant to the second and third elements of Solem, `need not be performed.'"); United States v. Kaluna (C.A.9 1997),192 F.3d 1188, 1199, ("In its most recent pronouncement on this subject, the [United States Supreme] Court held that `the eighth amendment "forbids only extreme sentences that are grossly disproportionate to the crime."')
Apparently, the penalty for a first degree misdemeanor under the Akron City Code is a maximum fine of one thousand dollars and a maximum term of six months imprisonment.[4] See Akron City Code 70.99(B) and 130.99(C) and (D). We note that Ms. Ross did not receive the harshest penalty; rather, she received a fine of two hundred and fifty dollars. The trial court suspended the sentence of thirty days incarceration and one hundred and fifty dollars of the fine. On an initial offense, as the cause before us, the trial judge has discretion to impose fines and incarceration up to the maximum noted above. Allowing one's dog to roam free, which results in the dog causing harm, is of serious concern to the health, safety, and welfare of the citizens of Akron. Where such harm is caused, the crime is more serious, a fact which is not lessened by the lack of a required culpable mental state. See Weibrecht,86 Ohio St.3d at 373. Hence, we cannot conclude that such a penalty is so grossly disproportionate to the crime that it shocks the conscience or sense of justice of the community. Accordingly, Ms. Ross's third assignment of error is overruled.
 D. Fourth Assignment of Error
A.C.C. 92.25(B)(4) CONTROL OF DOGS VIOLATES CONSTITUTIONALLY GUARANTEED EQUAL PROTECTION BY DISCRIMINATING AGAINST INNOCENT DOG OWNERS.
Ms. Ross avers that the right of dog owners to equal protection of the law has been violated by Akron City Code 92.25(B)(4). She asserts that dog owners are a protected class and, as such, differentiating between them and owners of other types of property and different kinds of pets violates equal protection principles. We disagree.
"The limit placed upon governmental action by the Equal Protection Clauses of the Ohio and United States Constitutions are nearly identical." Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 424. "Unless a statute provokes `strict judicial scrutiny' because it interferes with a `fundamental right' or discriminates against a suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose." Kadrmas v. Dickinson Pub. Schools (1988), 487 U.S. 450, 457-58,101 L.Ed.2d 399, 409. Moreover,
 "Simply stated, the test is that the unequal treatment of classes of persons by a state is valid only if the state can show that a rational basis exists for the inequality, unless the discrimination impairs the exercise of a fundamental right or establishes a suspect classification. See, e.g., McGowan v. Maryland (1961), 366 U.S. 420, for the traditional scrutiny test; see, e.g., Shapiro v. Thompson (1969), 394 U.S. 618; Harper v. Virginia Bd. of Elections
(1966), 383 U.S. 663; Griswold v. Connecticut (1965), 381 U.S. 479, for a discussion of `fundamental interest'; and see, e.g., Graham v. Richardson
(1971), 403 U.S. 365; Loving v. Virginia (1967), 388 U.S. 1; Oyama v. California (1948), 322 U.S. 633. If the discrimination infringes upon a fundamental right, it becomes the subject of strict judicial scrutiny and will be upheld only upon a showing that it is justified by a compelling state interest. That is, once the existence of a fundamental right or a suspect class is shown to be involved, the state must assume the heavy burden of proving that the legislation is constitutional. See, e.g., Eisenstadt v. Baird (1972), 405 U.S. 438, 447, footnote 7; Dunn v. Blumstein (1972), 405 U.S. 330, 342; Memphis Am. Fed. Of Teachers, Local 2032 v. Bd. of Edn. (C.A. 6, 1976), 534 F.2d 699; Tanner v. Weinberger (C.A. 6, 1975), 525 F.2d 51, 54.
* * *
 Under the traditional test of equal protection, unequal treatment of classes of persons by a state is valid if the state can show that a rational basis exists for the inequity. Ordinarily, under the rational basis requirement, any classification based "upon a state of facts that reasonably can be conceived to constitute a distinction, or differences, in state policy * * *" will be upheld. Allied Stores of Ohio v. Bowers (1959), 358 U.S. 522, 530."
Beatty v. Akron City Hospital (1981), 67 Ohio St.2d 483, 492-93, quoting Bd. of Edn. v. Walter (1979), 58 Ohio St.2d 368, 373, 376.
Hence, we will first determine whether this cause implicated a fundamental right or suspect classification and then proceed to apply the appropriate standard of review to the statute. As this court has previously noted, dog ownership is not a fundamental right. Vogel, supra, at 6. If the class has not, "[a]s a historical matter * * * been subjected to discrimination," and does not "exhibit obvious, immutable, or distinguishing characteristics that define [it] as a discrete group," and is "not a minority or politically powerless," it is not a suspect or quasi-suspect class for constitutional purposes. Lyng v. Castillo
(1986), 477 U.S. 635, 638, 91 L.Ed.2d 527, 533. There is no evidence that dog owners have been historically subjected to discrimination or are politically powerless or a minority. In fact, dog owners are numerous and, apparently, politically powerful as numerous past and present United States Presidents and members of the United States Congress are or were known dog owners. Further, dog ownership is not an immutable characteristic and its distinguishing feature — namely a dog — is often concealed from the general public in one's home. Hence, dog owners do not appear to be a discrete group that is easily identifiable. Accordingly, we conclude that dog owners are not a suspect class or a quasi-suspect class, and therefore, rational basis review of this statute is appropriate.
The distinction between dog owners and owners of other types of property is rationally related to a legitimate purpose. Dogs, in some cases, have been bred to assist with the defense of one's person and property and are more easily trained in that regard than other animals. Some dogs have a natural propensity to guard and defend. Further, dogs are generally larger and, it may be rationally concluded, more dangerous than other pets such as cats and rabbits when they are allowed to roam free. Hence, such a distinction is rationally related to a legitimate governmental function, namely protecting the health, safety, and welfare of the citizens of Akron. Accordingly, we find this statute to withstand rational basis review and overrule Ms. Ross's assignment of error.
 OTHER ISSUES OF LAW E. Fifth Assignment of Error
THE TRIAL COURT ERRED WHEN IT REFUSED TO GIVE THE JURY AN INSTRUCTION ON ASSUMPTION OF THE RISK.
 Eighth Assignment of Error
THE TRIAL COURT ERRED WHEN IT REFUSED TO ADMIT APPELLANT'S SOLE EXHIBIT, A COPY OF THE INCIDENT REPORT FAXED TO APPELLANT'S TRIAL COUNSEL FROM THE CITY OF AKRON.
Ms. Ross asserts that the trial court erred in refusing to give the jury instruction requested by Ms. Ross on assumption of the risk and erred in refusing to admit a copy of the report completed by the police at the scene of the dog bite into evidence. We disagree.
We will first address Ms. Ross's argument in regard to the instruction and then address her argument in regard to the police report. "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v.Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus. However, upon review of Akron City Code 92.25(B)(4), it is a strict liability offense and assumption of the risk is not among the enumerated defenses. Accordingly, we cannot conclude that the trial court erred in omitting such an instruction from the jury charge, as such an instruction would have been irrelevant and confusing.
We now turn to the police report, which Ms. Ross asserts was admissible to attack the credibility of Mr. Allen, the prosecution's main witness. She argues that the trial court erred in not allowing her to introduce the police report, which recounted that Mr. Allen had stated, shortly after the incident, that the dogs were mating when he entered the backyard to try to separate them, to impeach Mr. Allen's credibility at trial when he testified that the dogs were not mating.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id. Here, no defense to Akron City Code 92.25(B)(4) would be implicated by the dogs having been mating. Hence, the issue of whether the dogs were mating is irrelevant in this matter. Therefore, "under no circumstances would the defense be permitted to introduce extrinsic evidence, [as] * * * `a witness may not be impeached by evidence that merely contradicts his testimony on a matter that is collateral and not material to any issue in the trial.'" State v. Boggs
(1992), 63 Ohio St.3d 418, 422, quoting Byomin v. Alvis (1959),169 Ohio St. 395, 396. "[A] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." State ex rel. Carter v. Schotten (1994), 70 Ohio St.3d 89,92. Accordingly, as this matter was irrelevant at trial, we cannot conclude that the trial court abused its discretion in excluding this evidence offered solely to impeach Mr. Allen on a collateral matter. Ms. Ross's fifth and eighth assignments of error are overruled.
 F. Sixth Assignment of Error
THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION AND THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTIONS FOR ACQUITTAL WHERE THERE WAS NO EVIDENCE THAT APPELLANT WAS "CAPABLE OF PERFORMING" ANY ACT OR DUTY REQUIRED BY LAW.
 Seventh Assignment of Error
THE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Ms. Ross avers that her conviction was against the manifest weight of the evidence and based upon insufficient evidence. We disagree.
"While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion."State v. Gulley (Mar. 15, 2000), Summit App. No. 19600, unreported, at 3, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.
(Emphasis omitted.) State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4.
Akron City Code 92.25(B)(4) provides, as pertinent here, "[a]ny person owning * * * a dog shall be strictly liable if such dog is found to * * * [b]ite * * * any person * * * while the dog is off the premises of the owner[.]" Ms. Ross stipulated that she was the owner of the dog and that it was not on her property. Hence, the only remaining element is whether the dog bit Mr. Allen. Mr. Allen testified that the dog bit him repeatedly. Hence, we must conclude that Ms. Ross's conviction is not against the manifest weight of the evidence, nor is it based upon insufficient evidence. Ms. Ross, however, challenges her conviction due to the lack of evidence of some culpable mental state, which is not an element of the offense.
Akron City Code 92.25(B)(4) clearly provides that it is intended to be a strict liability offense. Akron City Code 92.25(B) and (F). Ms. Ross cites R.C. 2901.21(B), which provides that when an offense plainly indicates a purpose to impose strict liability, "culpability is not required for a person to be guilty of the offense." Akron City Code 130.07(B) is substantially similar, providing that "[w]hen the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense." Hence, we conclude that this is a strict liability offense and that the prosecution need not have shown any degree of culpability. See, generally,State v. Rife (June 13, 2000), Franklin App. No. 99AP-981, unreported, 2000 Ohio App. LEXIS 2500, at *9 ("[T]he language of R.C. 955.22(D), and its statutory and policy considerations, lead us to conclude that the Ohio Legislature intended to impose strict criminal liability on owners who fail to restrain or confine their vicious or dangerous dogs as specified in the section.") Accordingly, Ms. Ross's sixth and seventh assignments of error are overruled.
 G. Ninth Assignment of Error
PROSECUTORIAL MISCONDUCT BY ARGUING TO THE JURY THAT THE MATTER WAS NOT A CRIMINAL CASE, COUPLED WITH THE COURT'S FAILURE TO TAKE ANY CURATIVE MEASURES, DENIED APPELLANT A FAIR TRIAL WHEN SHE WAS CHARGED WITH A FIRST DEGREE MISDEMEANOR CRIME.
Ms. Ross asserts that the prosecutor committed misconduct by stating in his closing argument that "[t]he state is not asking you to decide whether or not this defendant is a criminal." She argues that this confused the jury as to whether the case was civil or criminal, thereby, prejudicing her. We disagree.
In reviewing allegations of prosecutorial misconduct, this court must bear in mind that the "`touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.'" State v. Hill (1996), 75 Ohio St.3d 195,203, quoting Smith v. Phillips (1982), 455 U.S. 209, 219, 71 L.Ed.2d 78,87. Prosecutorial misconduct will not serve as grounds for reversal unless the defendant was denied a fair trial. State v. Maurer (1984),15 Ohio St.3d 239, 266. The defendant must prove that the prosecutor's comments were improper and that they prejudicially affected his or her substantial rights. State v. Smith (1984), 14 Ohio St.3d 13, 14. The prosecutor stated in closing arguments: "The state is not asking you to decide whether or not this defendant is a criminal. The state is asking you [.]" At that point, Ms. Ross's attorney objected. The trial court overruled the objection, and the prosecutor continued, "[t]he state is asking you to decide whether her dog bit Mr. Allen in the face, or bit him at all." As the other elements of the crime charged were admitted by Ms. Ross, this was the only issue remaining for the jury. Further, Ms. Ross's attorney, in her closing argument, asserted not only that Mr. Allen was mistaken about which dog bit him, but also asked the jury to consider "[Ms. Ross] owns a dog. Does that make her a criminal? That's what I'm going to ask you to think about. The fact that she owns a dog, does that make her a criminal?" Essentially, she argued for jury nullification of the statute in question.
We cannot find prosecutorial misconduct here. The conduct at issue herein was made a crime by the duly elected Council and Mayor of the City of Akron; it was not the jury's province to decide whether such conduct was, or should be a crime; rather, the jury was to determine whether Ms. Ross committed the acts specified under the statute. See United Statesv. Moylan (1969), 417 F.2d 1002, 1006-7 (stating that although a jury may possess the power to nullify the law by acquitting despite undisputed guilt, such lawless behavior should not be encouraged, for it is for the judge to instruct on the law and for the jury to apply the facts as it finds them to the law as given). Accordingly, we find no prosecutorial misconduct or prejudice to Ms. Ross. Ms. Ross's ninth assignment of error is overruled.
 III.
Ms. Ross's assignments of error are overruled. The judgment of the Akron Municipal Court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ____________________________ WILLIAM G. BATCHELDER
SLABY, J. CONCURS.
[1] The record before this court does not contain the jury verdict form signed by all the jurors, pursuant to Crim.R. 31(A). However, as this issue is not raised, we will not pass upon it.
[2] We limit our analysis to the facts of this case and decline to pass upon whether this section of the Akron City Code may conflict with the Revised Code upon its application to other factual circumstances or where defenses enumerated in the Revised Code but omitted from the Akron City Code are raised.
[3] Ms. Ross also appears to aver that the statute is violative of the due process clause for lack of notice pursuant to the analysis set forth by the Ohio Supreme Court in City of University Heights v. O'Leary
(1981), 68 Ohio St.2d 130, 134. However, as was noted by the Ohio Supreme Court in O'Leary, 68 Ohio St.2d at 151, "[e]xcept under the unique circumstances of Lambert and Mancuso, decisions in which persons were required to register because of their status, knowledge of the law is not a requirement of due process." Accordingly, we find this argument unpersuasive.
[4] As both parties aver that this is the maximum prison term and fine without citation to the Akron City Code, we take it to be so. Although we find penalty provisions in regard to traffic offenses, Akron City Code 70.99(B), and Title XIII of the Akron City Code, Akron City Code 130.99(C) and (D), we have been unable to locate the penalty for a first degree misdemeanor in regard to Akron City Code 92.25(B)(4). We note that other penalty provisions in the Akron City Code refer to a provision setting forth the applicable penalty. See Akron City Code 90.99(B) ("Penalty, see § 130.99"); Akron City Code 93.99(B) ("Penalty, see § 130.99"); Akron City Code 94.99 ("Penalty, see § 130.99"); Akron City Code 95.99 ("Penalty, see § 130.99"); Akron City Code 96.99 ("Penalty, see § 130.99"); Akron City Code 98.99 ("Penalty, see § 103.99"); Akron City Code 99.99 ("Penalty, see § 130.99"); Akron City Code 101.99 ("Penalty, see § 130.99").